THE PEOPLE ex rel. THE PENNSYLVANIA RAILROAD COMPANY, Respondent, *v.* EDWARD WEMPLE, Comptroller, etc., Appellant.

> 138   1
> 150   49

*It seems* the state may impose upon domestic corporations, engaged in state and interstate commerce, a franchise tax, measured by their whole capital or business, or in any other way in the discretion of the legislature, without regard to the part of the business arising from interstate commerce, provided no hostile discrimination is made against such part.

*It seems*, also, that a foreign corporation, engaged both in the business of state and interstate transportation in this state, is subject to taxation here in common with domestic corporations.

The state, however, may not tax a foreign corporation upon its business carried on in this state, where it is exclusively the business of interstate commerce. Such a tax is a regulation of commerce, and the power to regulate commerce between the states is vested exclusively in congress.

*It seems* the state may levy a tax upon property employed in interstate commerce, having a *situs* within the jurisdiction, provided no adverse discrimination is made in the imposition of the tax between such property and other property of a similar character.

The tax imposed by the act of 1880 upon certain corporations, etc. (Chap. 542, Laws of 1880, as amended by chap. 361, Laws of 1881), is a tax upon the corporate franchises or business, not upon property. When imposed upon a domestic corporation, it is a tax upon its corporate franchises, and when imposed upon a foreign corporation, a tax on its business.

A tax may not, therefore, be imposed under the act upon a foreign corporation whose business, so far as it is carried on in this state, is exclusively of interstate commerce.

SICKELS — VOL. XCIII.    1

The relator, a Pennsylvania railroad corporation, whose line extends into other states, but not into this state, operates in connection with its road a ferry across the Hudson river to the city of New York, where it has terminal facilities used in receiving and delivering freight and passengers; it collects in that city, money due for transportation of freight to and from it, and sells there passenger tickets, employing a large number of agents, clerks and laborers. The state comptroller imposed a tax upon the corporation under said act. *Held,* that the business in which the relator was engaged in this state was exclusively that of interstate commerce, and so, that the tax was void.

*W. U. Tel. Co.* v. *Massachusetts* (125 U. S. 530); *Massachusetts* v. *W. U. Tel. Co.* (141 id. 40); *Pullman's Palace Car Co.* v. *Pennsylvania* (Id. 18); *Maine* v. *G. T. R. Co.* (142 id. 217), distinguished.

Reported below, 65 Hun, 252.

(Argued February 27, 1893; decided April 11, 1893.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made September 22, 1892, which reversed on certiorari the decision of the state comptroller, assessing a tax upon the relator.

The facts, so far as material, are stated in the opinion.

*Charles F. Tabor* for appellants. The relator was at all of the times between 1880 and 1889, both inclusive, a foreign railroad corporation doing business in this state, and, therefore, liable to taxation under the tax laws of 1880. (*People* v. *Eq. Trust Co.,* 96 N. Y. 387; *People* v. *H. S. M. Co.,* 105 id. 84; *People ex rel.* v. *Wemple,* 131 id. 69.) The relator being then subject to taxation under the act, the determination of the comptroller as to the assessment and taxation, unless clearly shown to have been erroneous, should not be disturbed. (*People ex rel.* v. *Wemple,* 129 N. Y. 565; *People* v. *Wemple,* 133 id. 328.) Upon the question as to how much capital was employed within this state, and whether the relator was doing business in this state, so as to bring it within the jurisdiction of the comptroller to make an assessment, the allegations in the return of the comptroller must govern. (*People ex rel.* v. *Fire Comrs.,* 73 N. Y. 439; *People ex rel.* v. *Comrs.,* 106 id. 67; *People ex rel.* v. *Wemple,* 61 Hun, 85; 131 N. Y. 67; *People ex rel.* v. *Gilon,* 126 id. 157.) While it is true that

the iron rails of the relator's road do not extend into the state of New York, it is not true that no part of its "transporta- tion lines" is within and operated within the state of New York. (*Powers* v. *Athens*, 99 N. Y. 528 ; *Langdon* v. *Mayor, etc.*, 93 id. 155 ; *Bedlow* v. *N. Y. F. D. D. Co.*, 112 id. 274.) The statute authorizing the comptroller to impose a tax upon corporations of other states doing business within this state, of the kind and character established by the proofs here, is not an interference with interstate commerce, and is con- stitutional. (*People* v. *E. T. Co.*, 96 N. Y. 387 ; *People ex rel.* v. *Wemple*, 129 id. 563 ; *People ex rel.* v. *Wemple*, 131 id. 68 ; *W. U. T. Co.* v. *Massachusetts*, 125 U. S. 547 ; *Mas- sachusetts* v. *W. U. T. Co.*, 141 id. 45 ; *Marye* v. *B. & O. R. R. Co.*, 127 id. 123 ; *H. Ins. Co.* v. *New York*, 134 id. 599 ; *P. P. C. Co.* v. *Pennsylvania*, 141 id. 18 ; *State of Maine* v. *G. T. R. R. Co.*, 142 id. 229 ; *Ottawa* v. *Perkins*, 94 id. 260 : *People* v. *Budd*, 117 N. Y. 13.)

*E. Randolph Robinson* for respondent. The language of the statutes under which the tax is laid is express and specific that the tax is upon franchise and business, and these alone. (Laws of 1880, chap. 542 ; Laws of 1881, chap. 361 ; Laws of 1882, chap. 151 ; Laws of 1885, chap. 501 ; Laws of 1890, chap. 522, § 3 ; *People* v. *H. Ins. Co.*, 92 N. Y. 345.) The taxes authorized by the acts in question are not only in terms, but in essence, as to domestic corporations, taxes on corporate franchises received from this state, and as to foreign corpora- tions taxes on business done within this State. (*People* v. *G. S. T. Co.*, 98 N. Y. 67 ; *C. T. Co.* v. *N. Y. C. & H. R. R. R. Co.*, 110 id. 250 ; *People ex rel.* v. *Wemple*, 129 id. 558 ; *People* v. *E. T. Co.*, 96 id. 387 ; *People* v. *H. S. M. Co.*, 105 id. 176.) The sole business of the Pennsylvania Railroad Company, within the state of New York, is that of interstate com- merce. (*Fargo* v. *Michigan*, 121 U. S. 230.) A tax by the state of New York upon the business of a foreign railway corporation, which has no portion of its own or leased lines within the state, which has not received and does not exer-

cise, directly or indirectly, any franchise granted by the legislature of the state, and does not enjoy any privilege within the state which is not required by the interstate commerce which is its sole business, is an undisguised tax upon the privilege of transacting interstate commerce, and is, therefore, unconstitutional and void. (*Fargo* v. *Michigan*, 121 U. S. 230 ; *Crandall* v. *Nevada*, 6 Wall. 35 ; *P., etc., S. S. Co.* v. *Pennsylvania*, 122 U. S. 326 ; *G. F. Co.* v. *Pennsylvania*, 114 id. 196.) A tax upon the privilege of doing business, no matter by what process the amount of the tax is computed, is in its nature and essence a license tax, and a license tax upon the right to engage in interstate commerce is unconstitutional. (*Wilton* v. *State of Missouri*, 91 U. S. 275 ; *Robbins* v. *Shelby*, 120 id. 489 ; *Leloup* v. *Port of Mobile*, 127 id. 640 ; *Lyng* v. *Michigan*, 135 id. 161 ; *N. & W. R. R. Co.* v. *Pennsylvania*, 136 id. 114 ; *Crutcher* v. *Kentucky*, 141 id. 47 ; *Pickard* v. *P. Co.*, 117 id. 34.) The objection is made by the return, that no appeal was taken by the relator to the state board of revision. The relator was not obliged to take such appeal before resorting to its remedy by certiorari. The relator's proceedings have been in all respects in conformity with the statutes. (Laws of 1889, chap. 463 ; *People ex rel.* v. *Wemple*, 60 Hun, 225 ; 129 N. Y. 558 ; *People ex rel.* v. *Wemple*, Id. 543 ; *People ex rel.* v. *Wemple*, 42 N. Y. S. R. 280.)

ANDREWS, Ch. J.    This is an appeal by the comptroller of the state of New York from an order of the General Term of the third department, reversing the determination of the comptroller assessing a tax on the relator for the sum of $40,886.89, under the alleged authority of chapter 542 of the Laws of 1880, and the acts supplementary thereto and amendatory thereof. The relator is a Pennsylvania corporation, operating a line of railroad for the transportation of freight and passengers, extending through the state of New Jersey into other states of the Union. No part of its road is within the state of New York. But it operates in con-

nection with its road a ferry from the New Jersey shore
across the Hudson river to the city of New York, where it
has terminal facilities consisting of wharves, piers and docks,
and buildings connected therewith, used in the transaction of
the business of delivering freight and passengers carried over
its line, to that city, and of receiving freight and passengers,
to be carried from the city into New Jersey and other states
reached by its system of roads.

The only transportation over New York territory carried
on by the relator is over that part of the Hudson river within
the territorial boundaries of the state, by means of its ferry
boats.  It collects in the city of New York money due for
transportation to that point and for transportation from that
city, and there makes contracts for transportation of freight
and passengers over its lines and issues and sells passenger
tickets.  It employs in the city of New York a large num-
ber of agents, clerks and laborers in the prosecution of its
business.  It is engaged in no business in that city, except
such as relates to the transportation of freight and passengers
over its lines.

The question of the validity of the tax in question, irre-
spective of alleged errors in the computation, depends upon
the point whether the scheme of taxation enacted by chapter
542 of the Laws of 1880, entitled "An act to provide for
raising taxes for the use of the state, upon certain corpora-
tions, joint-stock companies and associations," and its amend-
ments, can be enforced against the relator.  It is claimed in
behalf of the relator that, as applied to it, the tax is a tax
upon interstate commerce, and that the act under which it is
imposed is, as to the relator, an attempted regulation by the
state of interstate commerce, which appertains exclusively to
Congress under art. 1, sec. 8, clause 3 of the Federal Con-
stitution.  That a tax imposed by a state may constitute a
regulation of commerce was decided in the case of *Brown* v.
*Maryland* (12 Wheat. 419), and has been frequently decided
in subsequent cases.  There has been much difficulty in the
Federal courts in determining what constitutes interstate com-

merce, and what acts of the state are to be deemed regula-
tions thereof. . But there is no question, at least at this time,
that the business of the relator comes within the description
of "commerce among the states" in the commerce clause of
the Federal Constitution. (MILLER, J., *Fargo* v. *Michigan*,
121 U. S. 241; *Pickard* v. *Pullman South. Car Co.*, 117
id. 34.)

We do not understand it to be contended by the learned
counsel for the state that if the act of 1880, as applied to the
relator, is a regulation of commerce, the tax in question can
be sustained. .

In determining the question now presented, two propositions
must be deemed established. One is that the business in
which the relator was engaged in this state was exclusively
that of interstate commerce. Whatever it did here was
incident to and in aid of the business of interstate transpor-
tation. Interstate transportation was not a part of its busi-
ness only, in this state. It performed the work of an
interior carrier in New Jersey and other states, but in this
state its business was that of interstate commerce exclusively.
There may, therefore, be eliminated from the discussion the
question which would arise in the case of a foreign cor-
poration conducting within this state both the business of
strictly interior transportation and that of interstate carrier to
points within and points without the state. We do not intend
to be understood as determining that, in that case, the state
might not, under the act of 1880, lawfully impose upon
such a corporation, in common with all other corporations,
domestic and foreign, doing business here, a business tax
based upon its capital employed in the state, which, under the
amendment of 1885, is now the basis of taxation of corpora-
tions, liable to taxation under the act of 1880. (Chap. 501,
Laws of 1885.)

There would seem to be no question that domestic corpora-
tions, engaged in both state and interstate commerce, may law-
fully be subjected by the state to a franchise tax, measured by
its whole capital or business, or in any other way in the dis-

cretion of the legislature, without taking notice of the part of its business arising from interstate commerce, provided no hostile discrimination is made against such part. Nor would there seem to be any valid reason why a foreign corporation, engaged both in the business of state and interstate transportation in this state, should not be subject to taxation in common with domestic corporations. (See *People ex rel.* v. *Wemple*, 131 N. Y. 64 ; *Woodruff* v. *Parham*, 8 Wall. 123 ; *Osborne* v. *Mobile*, 16 id. 479.)

The second point which must be deemed to be established is that the tax imposed upon corporations under the act of 1880, as amended by chapter 361 of the Laws of 1881, is a tax upon the " corporate franchise or business," and is not a tax upon property. It is made a tax upon the corporate franchise or business by the express language of the enactment, and it was upon the ground that it was a tax on corporate franchises or business, and not upon property, that this court, in the case of *People* v. *Home Ins. Co.* (92 N. Y. 345), sustained the tax assessed against the insurance company in that case, a domestic corporation, measured by a percentage on its whole capital, part of which was invested in United States bonds. The court assented to the proposition that if the tax was a property tax, the amount invested in United States securities should have been deducted in ascertaining the amount of its taxable capital. The then learned chief judge in stating the question, said : " It thus appears that the only question presented for our consideration under this branch of the appeal, is whether the tax in question was in fact levied upon the franchises of the defendant, which would be undeniably lawful, or upon the property of the corporation invested in the securities of the general government, which would be unlawful," and in conclusion he said : " It seems conclusively established that the act under which this tax was levied must be held to have imposed a franchise and not a property tax, and that its enactment constituted a lawful exercise of legislative power." This decision was affirmed, on the same ground upon which the decision in this court proceeded, by the Supreme Court of the

United States (134 U. S. 594). The tax when imposed on a
domestic corporation is a tax on its corporate franchises; when
imposed on a foreign corporation is a tax on its business, a
distinction based on the fact that corporate franchises are only
taxable within the jurisdiction which creates them, and where
alone they can be said to have a *situs.* (*People* v. *Equitable
Trust Co.*, 96 N. Y. 388.)

We come, therefore, to the crucial question in the case —
can the state of New York tax the relator, a foreign corpora-
tion, upon its business carried on in this state, which is
exclusively the business of interstate commerce. The ques-
tion stated in another form is, may a state tax a foreign cor-
poration whose business in such state is exclusively that of
interstate commerce, for the privilege of transacting that
business here, because as we have held, this is the essential
nature of the tax under the act of 1880. (*People ex rel., etc.,*
v. *Wemple*, 131 N. Y. 68.) If the tax is a regulation of
commerce, and not an exercise of the taxing power of the
state, the relator is protected against its imposition by force
of the Federal Constitution. The power to regulate commerce
between the states is vested exclusively in Congress, and the
fact that Congress has not acted, confers no power of state
regulation, except as to matters of local interest incidentally
affecting foreign or interstate commerce, and where action by
the state is permitted under the police power in aid or promo-
tion of commerce, such as the regulation of pilots, wharves,
harbors, bridges, etc., and for the protection of the public
health. (*Cooley* v. *Board of Wardens of Phila.*, 12 How.
[U. S.] 299; *Welton* v. *State of Missouri*, 91 U. S. 282;
*Brown* v. *Houston*, 114 id. 630.) In *Cooley* v. *Board of
Wardens of Phila.*, Mr. Justice CURTIS, speaking of this sub-
ject, said: "Whatever subjects of this power are in their
nature national, or admit of only one uniform system or plan
of regulation, may justly be said to be of such a nature as to
require exclusive regulation by Congress;" and Mr. Justice
FIELD, in *Welton* v. *State of Missouri*, said: "The fact that
Congress has not seen fit to prescribe any specific rules to gov-

ern interstate commerce, does not affect the question. Its inaction on this subject, when considered with reference to its legislation with respect to foreign commerce, is equivalent to a declaration that interstate commerce shall be free and untrammelled."

The state power of taxation extends in general to all property, real or personal, having an actual *situs* within the state, irrespective of the residence of the owner. The state may not only tax property within its limits, but the business and occupation of its citizens, and the franchises of domestic corporations; and when it permits foreign corporations to carry on business in the state, it may ordinarily subject the privilege to such taxation as it may deem expedient. In short, the power of state taxation is coextensive with the subjects of taxation, and the state may define the subjects, provided only that the property, privilege, or right upon which the tax is imposed is within the jurisdiction. The existence of this power is essential to the existence of the state governments. But, under our system, certain powers have been delegated by the whole people to the general government, some exclusive, and some concurrent with the power of the states, and in some instances, affirmative restrictions upon the power of the states have been imposed by the Federal Constitution, and others are implied from affirmative powers vested in the government of the Union. Among these restrictions, express or implied, are restrictions on the taxing power of the states. The states cannot tax the property of the Federal government within the jurisdiction, nor the public securities of the United States, nor the instrumentalities through which it exercises its delegated powers. It can levy no tax upon exports or imports, and goods imported from foreign countries and brought within a state cannot be reached by its taxing power while in the hands of the importer in the condition in which they were when imported, unless they have been mingled with the general mass of property therein. These are familiar illustrations of an acknowledged principle.

But conflicts have arisen in respect to the power of state taxation which do not admit of so easy a solution. Indeed in many cases it has been found difficult to draw the line and to determine where state taxation is excluded under the provisions of the Federal Constitution. The difficulty of the subject has been acknowledged by the courts and by no court more frequently than by the Supreme Court of the United States. It is delicate ground, and as was said by Chief Justice CHASE in *Osborne* v. *Mobile* (16 Wall. 479), " It is as important to leave the rightful powers of the state in respect to taxation unimpaired, as to maintain the powers of the Federal government in their integrity." No more fruitful subject of controversy has been presented, than the proper construction of the commerce clause in the Federal Constitution, as connected with the right of the states to impose taxation upon interstate commerce, or rather on the question, when a tax is to be regarded a tax on such commerce, because the bald proposition that a state may tax interstate commerce has never probably been asserted by any of the courts of the states. The tax has usually been laid on the business, or franchises, or on the occupation of those engaged in interstate commerce, or on the property employed therein, or on freights, the tonnage of vessels, or in some form in which it could be plausibly argued that the tax was not a direct tax on the commerce itself.

In deciding the question before us we are bound to follow the adjudications of the Supreme Court of the United States, so far as they have determined any constitutional principle bearing upon the point in controversy. It has been held in a series of decisions in that court, that while a state tax, which in substance and effect is a direct tax on interstate commerce, constitutes a state regulation of commerce and is the usurpation of a power exclusively vested in Congress and, therefore, void, yet that the commerce provision of the Federal Constitution does not deprive the states of the power to levy a property tax upon property employed in interstate commerce, having a *situs* within the jurisdiction, provided no adverse dis-

1893.]    People ex rel. P. R. R. Co. v. Wemple.    11

N. Y. Rep.]    Opinion of the Court, per Andrews, Ch. J.

crimination is made in the imposition of the tax between such property and other property of a similar character. The state may subject to a property tax in common with other property, every description of property, real and personal, having its *situs* there, although used or employed exclusively in the business of foreign or interstate commerce. Ships or vessels engaged in foreign or coastwise commerce may be taxed at their home port, and the products of one state carried into another and there held for sale by the original producer, may be taxed, even before sale in the state to which they have been taken. The courts have given the broadest construction to the power of a state to lay a property tax on property employed in interstate commerce, provided, as before stated, it is subjected to no unjust discrimination. (*Transportation Co.* v. *Wheeling,* 99 U. S. 273; *Brown* v. *Houston, supra;* *Pullman's Car Co.* v. *Pennsylvania,* 141 id. 23.) Such taxation, although indirectly affecting interstate commerce, is held not to be a regulation of commerce prohibited by the Federal Constitution. (Strong, J., *State Tax on Railway Gross Receipts,* 15 Wall. 293; *R. R. Co.* v. *Maryland,* 21 id. 460.)

If the tax imposed on corporations by the act of 1880, and the subsequent statutes amending the same, had been a property tax instead of a tax on franchises or business, it would not, as we interpret the decisions of the United States Supreme Court, have been subject to the objection now made in behalf of the relator, nor could the relator have lawfully resisted its payment. The tax would then have been a tax imposed on the property of the relator actually within this state, and that it was employed in conducting the operations of interstate commerce would have furnished no claim on constitutional grounds for exemption. But we understand that it is the established doctrine of the Federal courts that no state can impose a tax on the business of interstate commerce, whatever may be the guise under which the tax is laid, and that a tax which operates directly as a tax on such business is void as a state regulation of commerce. The general power of a state to tax business pursuits and callings carried on within the

state, does not, as is held, extend to the taxation of such pursuits where the business is that of interstate commerce. This question has frequently arisen under state laws imposing a license tax upon agents of firms or corporations of other states, as a condition of being permitted to prosecute within the state exacting the license, the business of selling or taking orders for the sale of goods or products to be sent there from the state where the principal resides. In some cases the statute under consideration discriminated between the agents of foreign principals and the agents of domestic principals, and in others no such discrimination was made. While some of the earlier decisions may seem to conflict with the later ones, the rule of the Federal courts, established by the recent decisions, is "that a state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it," and that it is immaterial whether the person from whom the license is exacted is an individual or a foreign corporation. (*Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *Crutcher* v. *Kentucky*, 141 id. 47, and cases cited.)

The principle upon which the license cases proceed is that a license tax is a tax on the business of interstate commerce, and being such it is a regulation of commerce, a subject exclusively within the regulating power of Congress. There seems to be no proposition more firmly established by the decisions of the United States Supreme Court than that a tax imposed by a state upon the business of interstate commerce, is a tax on such commerce and is, therefore, void. The difficulty arises in determining whether the tax in a given case is in substance a tax on commerce, or a tax affecting commerce indirectly and incidentally only, in which latter case it is not obnoxious to constitutional objection. Taxation of property employed in interstate commerce affects commerce, because it increases the expense of carrying it on, and the burden ultimately falls on the subjects of commerce, but this as we have said does not remove such property from the taxing power of the state. So the taxation of the franchises of domestic corporations,

part of whose business may be interstate commerce, falls in part upon such commerce, but we do not understand that this in any respect qualifies the power of the state. Many cases of this kind arise under the law now under consideration, in the taxation of railroads organized under our laws. It must be assumed that the grant by a state of corporate powers carries with it special and peculiar advantages to the corporation to whom the grant is made, and it is this that justifies the taxation of corporate franchises by the state. But it has been held that the state may not tax the gross receipts of a steamship company incorporated under its laws, engaged in foreign and interstate transportation. (*Phila. & Southern S. S. Co. v. Pennsylvania*, 122 U. S. 326.) In that case BRADLEY, J., speaking of the tax, said : " If intended as a tax on the franchise of doing business, which in this case is the business of transportation in carrying on interstate and foreign commerce, it would be clearly unconstitutional." This was regarded as a direct tax on commerce, as was the tax on all the freight carried by the Reading R. R. Co., a domestic corporation of the taxing state which included freight brought into or carried without the state. (*State Freight Tax*, 15 Wall. 232.) But we do not understand that the state may not tax the franchises of all corporations chartered by it, by a uniform and general rule, or that such taxation would be unauthorized as applied to a corporation engaged in interstate commerce. It could not tax the business as a distinct and separate subject of taxation or discriminate against it.

The tax against the Pennsylvania Railroad Company, involved in this case, was distinctly a tax on its business, and that business in this state, as we have said, was exclusively interstate commerce. It has been suggested that the tax is upon the privilege it enjoys as a foreign corporation, of coming into this state and here exercising corporate functions. We are not called upon to determine in this case whether the state, under the general rule that it may exclude foreign corporations from coming here, and that it is by comity alone that such corporations are permitted to exercise corporate franchises

outside of the jurisdiction of origin, could lawfully exclude a foreign corporation engaged in interstate commerce from landing its freight or passengers on our shores, or at the wharves in the city of New York, or from there receiving freight or passengers. (See *Pensacola* v. *West. Union Tel. Co.*, 96 U. S. 1; *Paul* v. *Virginia*, 8 Wall. 168; *Pembina Mining Co.* v. *Pennsylvania*, 125 U. S. 181; *Crutcher* v. *Kentucky, supra.*) It is sufficient for this case to say that the state has not attempted to exclude the relator from doing business in this state, or withdrawn the comity under which it has been permitted to carry on its business here, and acquire real and personal estate for the transaction of its business. The relator is lawfully here, and being here it cannot, we think, under the authorities, be lawfully subjected by the state to a tax upon its business of interstate commerce, or for the privilege of conducting its business here. It does not relieve the tax from its objectionable character that the law of 1880 was not aimed at the business of interstate commerce specifically, but applies to all corporations engaged in transportation, nor is it material that the exemption claimed may render taxation unequal as between domestic and foreign corporations. The same feature existed in several of the cases in which a tax by the state has been held to be void as a regulation of commerce. The answer made by the cases is, that protection of the business of interstate commerce from state taxation exists under the paramount authority of the Federal Constitution. The cases of *Fargo* v. *Michigan* (*supra*), and *Gloucester Ferry Co.* v. *Pennsylvania* (114 U. S. 196), seem to be conclusive in favor of the relator here. Both were cases of foreign corporations engaged in interstate commerce. In *Fargo* v. *Michigan* the state of Michigan sought, under a state statute, to tax the gross receipts of the corporation. In the *Ferry Company* case the state of Pennsylvania, under a statute very similar to the statute of New York, sought to tax the company, a corporation of New Jersey operating a ferry across the Delaware river from the New Jersey shore to Philadelphia. The tax was nominally on the capital of the company. In both cases the tax was held by

the court to be void as regulations of commerce.   In the *Ferry* case the Supreme Court of Pennsylvania sustained the tax on the ground that the company did business in that state, but it was held by the Supreme Court of the United States, in an unanimous opinion reversing the decision of the state court, that as this business was interstate commerce, it was not subject to taxation by the state.

The learned counsel for the state, who presented with much ability at our bar the argument in support of the tax now in question, places much stress on the recent cases of *Western Union Tel. Co.* v. *Massachusetts* (125 U. S. 530); *Massachusetts* v. *Western Union Tel. Co.* (141 id. 40); *Pullman's Palace Car Co.* case (Id. 18), and *Maine* v. *Grand Trunk Railway* (142 id. 217).   The decisions in the *Telegraph* cases and in the *Pullman Car* case were placed distinctly on the ground that the tax in these cases was imposed upon property having a *situs* in the taxing state, and were thus brought within the general rule that property used in interstate commerce is subject, as all other property within a state, to taxation for municipal purposes.   The case of *Maine* v. *Grand Trunk Railway* was decided on the ground that the tax imposed under the statute of Maine in that case was a franchise tax upon corporate privileges conferred by the legislature of the state on the defendant corporation, and that it did not invalidate the tax because the amount was apportioned with reference to the gross receipts for transportation over its whole line, which extended beyond the state.   The dissent in that case proceeded upon a different view taken by the minority of the court as to the character of the tax, their opinion being in substance that it was a tax on the business of interstate commerce.   These cases do not disturb the general principle of the other cases.   Following, as we suppose, the decisions of the Federal court, we are constrained to hold that the tax now under consideration is void as a regulation of commerce.

The order of the General Term is, therefore, affirmed.

All concur, except Maynard, J., not sitting.

Order affirmed.