210 PEOPLE ex rel. DUNKIRK, &c., R. CO. v. CAMPBELL

Third Department, December Term, 1893.                    [Vol. 74.

The People of the State of New York ex rel. The Dunkirk, Allegheny Valley and Pittsburgh Railroad Company v. Frank Campbell, Comptroller of the State of New York.

*State railroad franchise tax — section 6 of chapter 542 of Laws of 1880, as amended — domestic corporation — tax upon the gross earnings, within the State, on inter-State business — constitutionality of the tax — the "inter-State commerce" clause of the Federal Constitution.*

The tax imposed by section 6 of chapter 542 of the Laws of 1880, as amended by chapter 361 of the Laws of 1881, which prescribes that "every corporation formed for * * * transportation purposes * * * and doing business in this State * * * shall pay to the State Treasurer for the use of the State, as a tax upon its corporate franchise or business in this State, a tax at the rate of five-tenths of one per centum upon the gross earnings in this State of said corporation * * * for * * * business transacted in this State," is legally applicable to the gross earnings, arising from the carriage of goods or passengers within the State of New York, of a consolidated railroad corporation created under the Laws of New York and of an adjoining State, whose line is from a point in the State of New York to a point in such adjoining State, and which at each terminus connects with roads running to other States, although such carriage within the State of New York is a part of "inter-State business," that is, of business which originated in this State and terminated in another State, or originated in another State and terminated in this State, or both originated and terminated in another State.

In such a case the tax is not a tax imposed by the State on inter-State commerce, but is simply a tax on a domestic corporation, created by the State, for the privileges and franchise granted to it by the power which created it; and such a tax may be legally and constitutionally imposed by the State.

The imposition of such a tax upon the gross earnings of a domestic corporation for the carriage of goods or passengers within the State of New York, where the beginning or termination of such business is in another State or country, is not within the prohibition upon State legislation arising from the "inter-State commerce" clause of the Federal Constitution.

The power conferred by the Federal Constitution upon Congress to regulate commerce with foreign nations and among the States, does not reach so far as to prohibit a State from imposing a franchise tax upon a corporation created by and doing business in such State, as to all business done by it in the State in the transportation of property or persons coming from or going to any other State or country.

Certiorari to review the action of the Comptroller of the State, in imposing a tax upon the gross earnings of the relator arising from its inter-State business in addition to the tax imposed upon the

relator's franchise and business in the State of New York for the year ending June 30, 1892.

*Brown & Wells*, for the relator.

*Simon W. Rosendale, Attorney-General*, for the respondent.

MAYHAM, P. J. :

The relator is a corporation organized and incorporated under the laws of New York, and operating a railroad for the transportation of passengers and freight between Dunkirk in the State of New York and Titusville in the State of Pennsylvania.

In August, 1892, the relator made a report to the Comptroller of the State of New York for the purpose of taxation, under chapter 542 of the Laws of 1880, and the acts amendatory thereof, and in such report embraced a statement of the gross earnings of the relator in its business between points wholly in the State of New York, amounting to the sum of $53,158.69, upon which sum it shortly thereafter paid into the State treasury a tax of five-tenths of one per cent imposed thereon, being the sum of $265.79.

This statement or report of the relator was deemed incomplete by the Comptroller, and he thereupon required the relator to make a more full and complete report. In obedience to that request, the relator, under protest, filed a supplemental report for the same year, in which, among other things, it alleges that the company is a consolidated railroad corporation created by the laws of the States of New York and Pennsylvania, and during said year owned and operated a system of railways in both States, and was connected with other lines of railway running in other States and the Dominion of Canada, so as to form continuous lines for transportation to points outside of the State of New York.

That the relator divided its business into two classes, one of which it denominated "local business," which originated and terminated within the State. The other class of business, which it denominated "inter-State business," that which is carried over other lines of railroads and into other States and Canada. In the supplemental report it subdivided this last-named class as follows :

*First.* That which originates at a point in this State, and terminates at a point in another State or country.

212 PEOPLE ex rel. DUNKIRK, &c., R. CO. v. CAMPBELL

THIRD DEPARTMENT, DECEMBER TERM, 1893. [Vol. 74.

*Second.* That which originates in another State or country, and terminates in this State.

*Third.* That which originates and also terminates in another State or country.

The report also shows that this kind of service is performed under but one contract with shipper or traveler from starting point to destination, at a gross price or sum, and that the sum so received is apportioned between the different lines of the companies upon principles agreed upon between them, in which apportionment distance is only one of the elements calculated.

The report also shows that the sum received by the relator as its share of this inter-State transportation during said year, amounted to $75.429.36, which sum the relator adds to the $53,158.69, which it denominates "local business," making the aggregate earnings $128,588.05, on which it computes a tax of five-tenths of one per cent, amounting to $624.94, from which it deducts $265.79, the tax paid on local business, leaving $377.15.

This assessment the relator·required the Comptroller to review and readjust under the provisions of chapter 361 of Laws of 1881. The required rehearing was had before the Comptroller, in which the State and relator were both represented by counsel, and on which testimony was taken. At the conclusion of such hearing the Comptroller made the following order:

"An application having been made by the above-named Dunkirk, Allegheny Valley and Pittsburgh Railroad Company for a revision and resettlement of the taxes assessed and determined against it by the Comptroller of the State of New York for the year ending June 30, 1892, and the said Comptroller having heard proofs offered on behalf of the said Dunkirk, Allegheny Valley and Pittsburgh Railroad Company in support of said application, and after due consideration thereof, the Comptroller does determine that the assessment heretofore made against the said Dunkirk, Allegheny Valley and Pittsburgh Railroad Company does not include taxes which could not have been lawfully demanded, and, therefore, declines to make any revision or readjustment of the same.

"CALVIN J. HUSON,

"*Deputy Comptroller.*"

The relator concedes its liability to pay a tax of one-half of one per cent on its gross earnings on all business done by it as a carrier where the business originates and terminates within this State, so that no question arises in this case over the rate of taxation.

But it is insisted by the relator that the Comptroller is prohibited by the Federal Constitution from imposing a tax upon the earnings for the carriage of goods or passengers within this State, where the beginning or terminating of such business is in another State or country, and that as to such earnings the relator has complete immunity from taxation; that the power in that instrument conferred upon Congress, to regulate commerce between the States, reaches so far as to prohibit the States from imposing a franchise tax upon a corporation created by and doing business in a State, as to all business done by it in the State in the transportation of property or persons coming from or going to any other State or country.

If this contention can be maintained it is not difficult to see how gross inequalities in the burdens of taxation will fall upon corporations engaged in the carrying trade.

Take as an illustration the New York Central and Hudson River Railroad Company and the West Shore Railroad Company; both have their western terminal point at Buffalo. The former has its eastern terminal point in New York city. It would, therefore, be, so far as Buffalo and New York traffic is concerned, entirely within the State, and subject as to that trade to this tax. The latter of these great parallel carrying corporations has its western terminus at Buffalo, but its eastern terminus is at Jersey City, for all commercial purposes practically New York and yet in another State, and because of that terminal point, and the fact that for a few miles its line is in another State, its income from its carrying traffic, although for the same distance as that of the New York Central and Hudson River Railroad Company, would be entirely exempt from taxation. But we are not called upon to discuss the inequality of the operation of laws; our only duty is to declare what the law is, in a given case, when properly before us for adjudication. But in order to determine the intention of the Legislature we may sometimes gather light by examining the consequences which different constructions may have upon the operation of a given statute and thus promote the purposes of the enactment.

214 PEOPLE ex rel. DUNKIRK, &c., R. CO. v. CAMPBELL

Third Department, December Term, 1893.　　　[Vol. 74.

The language of the statute under which the Comptroller assumed to impose this tax is as follows: " Every corporation formed for * * * transportation purposes * * * and doing business in this State * * * shall pay to the State Treasurer for the use of the State, as a tax upon its corporate franchise or business in this State, a tax at the rate of five-tenths of one per centum upon the gross earnings in this State of said corporation or company or association, for tolls, transportation, telegraph, telephone or express business transacted in this State."

It is quite clear, if this language is to be literally construed, and this provision to be deemed constitutional, that this tax was properly imposed. The tax is imposed " upon the gross earnings in this State, for * * * business transacted in this State."

No attempt is made to tax the relator for earnings out of the State, or for business not transacted in this State.

The tax is imposed upon " the sum received by this company as its share of inter-State transportation." (See supplemental report of relator.) That share must be confined, it would seem, to the earnings of its property in this State as divided with other connecting corporations out of the State.

This is not a tax upon the property of the relator, but rather a tax upon its franchise, which the law measures by its gross earnings within this State, and is, in the language of section 6 of chapter 361 of the Laws of 1881, " A tax on its corporate franchise and business in this State." In *People* v. *Home Ins. Co.* (92 N. Y. 328) the court, in examining the taxing power of the State arising under chapter 542 of Laws of 1880, as amended by chapter 361 of Laws of 1881, held that the taxes upon corporations imposed by said act are taxes upon franchise, and not upon property, and the fact that dividends, a portion of which are derived from securities exempt from taxation, furnish the basis for computing the amount of the tax does not invalidate it.

This conclusion seemed to arise out of the fact that the amount of the dividends was adopted in this scheme of taxation in fixing or measuring the amount of the franchise tax.

And the court holds that the Legislature has, by virtue of its jurisdiction over corporations organized under its laws, authority to impose such a tax. In concluding a very exhaustive examination

PEOPLE ex rel. DUNKIRK, &c., R. CO. *v.* CAMPBELL 215

Hun.]          THIRD DEPARTMENT, DECEMBER TERM, 1893.

of the power of the Legislature to impose a franchise tax upon corporations and measure the amount of the tax by the gross earnings of the business, Chief Judge RUGER uses this language : " We feel constrained to hold, in accordance with the principles laid down in the cases cited, that the tax in question was a tax upon franchise alone, and was, therefore, within the exercise of legitimate legislative power." This case was affirmed in the United States Supreme Court (134 U. S. 594). In *People* v. *The Equitable Trust Co.* (96 N. Y. 387) the power of the Legislature to impose such a franchise tax upon domestic corporations was reiterated. These acts again came under consideration in the case of *The People ex rel. The American Contracting & Dredging Co.* v. *Wemple* (129 N. Y. 558), which was a domestic corporation doing business in the Panama canal, but with its principal office and place of business in New York city.

The Comptroller settled and adjusted the franchise tax under this act upon the dividends declared upon the amount of capital stock employed in the State. And it was held that the tax was not upon the property of the corporation, but upon the franchise and business, and as to domestic corporations is in no sense confined to such as do business in the State exclusively. From the above authorities it appears that this tax is not imposed upon the property or business of the relator, but upon the franchise granted by the State, the amount of which is graduated by the earnings of the relator in carrying on its business in this State.

It is not easy to harmonize the various decisions of the Federal and State courts, or even of the Federal court itself, when questions of this character have arisen upon statutes slightly different in their language, or facts nearly alike, but yet presenting a shade of difference. In *Fargo* v. *Michigan* (121 U. S. 230), when the tax was imposed upon a foreign express company, MILLER, J., uses this language : " The proposition that the States can, by way of a tax upon business transacted within their limits, or *upon the franchises of corporations which they have chartered*, regulate such business or the affairs of such corporations, has often been set up as a defense to the allegation that the taxation was such an interference with commerce as violated the constitutional provision now under consideration. But where the business so taxed is commerce itself, and is commerce among the States, or with foreign nations, the

constitutional provision cannot thereby be *evaded, nor can the States, by granting franchises to corporations engaged in the business of the transportation of persons or merchandise among them, which is itself inter-State commerce, acquire the right to regulate that commerce, either by taxation or in any other way."*

This would seem to be a positive declaration that the State could not impose a tax upon a franchise granted by it to a corporation for carrying merchandise which was carried inter-State. But as the decision arose out of the attempt of a State to tax a foreign corporation the statement was not necessary for the determination of the question before the court; it was *obiter.*

Without attempting to reconcile the apparent conflict of authority upon this subject, we think we may safely adopt as authority the latest utterance of the Court of Appeals of this State in *People ex rel. Penn. R. R. Co.* v. *Wemple* (138 N. Y. 1), and that of *Maine* v. *The Grand Trunk Ry. Co.* (142 U. S. 217).

In the former case ANDREWS, J., in discussing the power of this State to impose a tax upon a foreign corporation doing an inter-State business, uses this language:

" There may, therefore, be eliminated from the discussion the question which would arise in the case of a foreign corporation conducting within this State both the business of strictly interior transportation and that of inter-State carrier to points within and from points without the State. We do not intend to be understood as determining that, in that case, the State might not, under the act of 1880, lawfully impose upon such a corporation, in common with all other corporations, domestic and foreign, doing business here, a business tax, based upon its capital employed in the State, which, under the amendment of 1885, is now the basis of taxation of corporations liable to taxation under the act of 1880. (Chap. 501, Laws of 1885.)

" There would seem to be no question that domestic corporations engaged in both State and inter-State commerce *may lawfully be subjected by the State to a franchise tax, measured by its whole capital or business, or in any other way, in the discretion of the Legislature, without taking notice of the part of its business arising from inter-State commerce,* provided no hostile discrimination is made against such part. Nor would there seem to be any

PEOPLE ex rel. DUNKIRK, &c., R. CO. *v.* CAMPBELL 217

Hun.]          Third Department, December Term, 1893.

valid reason why a foreign corporation, engaged both in the business of State and inter-State transportation in this State, should not be subject to taxation in common with domestic corporations. (See *People ex rel. Southern Cotton Oil Co.* v. *Wemple*, 131 N. Y. 64; *Woodruff* v. *Parham*, 8 Wall. 123; *Osborne* v. *Mobile*, 16 id. 497.)"

In the *Maine Case* (*supra*) this question arose under an act of the State Legislature of that State passed in 1881, containing, among other things, the following provisions:

" Every corporation     *   *   *     operating a railroad in the State shall pay to the State Treasurer for the use of the State, an annual excise tax for the privilege of exercising its franchises." The act then made the following provisions for ascertaining the amount of the tax:

" The gross transportation receipts of such railroad line or system, as the case may be, over its whole extent within and without the State, shall be divided by the total number of miles operated, to obtain the average gross receipts per mile, and the gross receipts in this State shall be taken to be the average gross receipts per mile, multiplied by the number of miles operated within this State."

The Circuit Court of Maine held that a tax imposed under this statute was a regulation of inter-State and foreign commerce, and in conflict with the exclusive power of Congress over that subject under the Constitution of the United States, and was invalid. From this judgment the State brought a writ of error to the Supreme Court of the United States, where the judgment of the Circuit Court was reversed, the court holding that the tax was an excise tax upon the corporation for the privilege of exercising its franchise within the State of Maine, and in pronouncing the opinion of that court Field, J., uses this language: " The privilege of exercising the franchises of a corporation within a State is generally one of value, and often of great value, and the subject of earnest contention. It is natural, therefore, that the corporation should be made to bear some proportion of the burdens of government. *As the granting of a privilege rests entirely in the discretion of the State, whether the corporation be of domestic or foreign origin, it may be conferred upon such conditions, pecuniary or otherwise, as the State in its judg-*

*ment may deem most conducive to its interest or policy.* It may require the payment into its treasury each year of a specific sum, or may apportion the amount exacted according to the value of the business permitted *as disclosed by. its gains or receipts of the present or past years.*

" The character of the tax or its validity is not determined by the mode adopted in fixing its amount for any specific period, or the times of its payment. The whole field of inquiry into the extent of revenue from sources at the command of the corporation is open to the consideration of the State in determining what may be justly exacted for the privilege. *  *  *

" The court below held that the imposition of taxes was a regulation of commerce, inter-State and foreign, and, therefore, in conflict with the exclusive power of Congress in that respect, and on that ground alone it ordered judgment for the defendant.

" This ruling was founded upon the assumption that a reference by the statute to the transportation receipts, and to a certain percentage of the same in determining the amount of the excise tax, *was, in effect, the imposition of the tax upon such receipts, and, therefore, an interference with the inter-State and foreign commerce.* But a resort to those receipts was simply to ascertain the value of the business done by the corporation, and thus obtain a guide to a reasonable conclusion as to the amount of the excise tax which should be levied, *and we are unable to perceive in that resort any interference with transportation, domestic or foreign, over the road of the railroad company, or any regulation of commerce which consists in such transportation.* If the amount ascertained were specifically imposed as the tax no objection to its validity would be pretended. And if the inquiry of the State as to the value of the privilege were limited to receipts of certain past years, instead of the year in which the tax is collected, it is conceded that the validity of the tax would not be affected.

"And if not, we do not see how a reference to the results of any other year could affect its character. *There is no levy by the statute on the receipts themselves, either in form or fact. They constitute, as said above, simply the means of ascertaining the value of the privilege conferred.*"

The principle contended for by the Comptroller and contained in

the Laws of 1880 and 1881, *supra*, is clearly upheld in these cases. last cited, and, as was said by Justice FIELD, "The character of the tax or its validity is not determined by the mode adopted for fixing its amount for any specific period or the times of its payment."

It seems to follow that this tax is not one imposed by the State on inter-State commerce, but simply a tax on a domestic corporation created by the State for the privileges and franchise granted to it by the power which created it, and that such tax may be legally and constitutionally imposed by the State. The decision of the Comptroller must, therefore, be confirmed, and the writ of certiorari quashed, with fifty dollars costs to the respondent and legal disbursements.

Let an order be entered accordingly.

PUTNAM and HERRICK, JJ., concurred.

Decision of the Comptroller affirmed, writ of certiorari quashed, with fifty dollars costs and disbursements.