PEOPLE ex rel. SODA FOUNT. CO. v. ROBERTS.   585

App. Div.]        THIRD DEPARTMENT, MAY TERM, 1898.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. AMERICAN SODA
    FOUNTAIN COMPANY, Relator, v. JAMES A. ROBERTS, as Comp-
    troller of the State of New York, Respondent.

*Taxation — a foreign corporation, whose business in the State of New York consists
    wholly of manufacturing and sales by sample, is not taxable.*

A corporation, organized under the laws of New Jersey, for the purpose of man-
    ufacturing and selling soda and mineral water apparatus and supplies of all
    kinds for dealers, and to purchase and sell such articles, had a large factory in
    the city of New York, where it made "soda water apparatus and everything
    relating to that business," the articles so made being sold in the State of New
    York, in which State the corporation purchased from the manufacturer glass-
    ware to the extent of about $6,000 worth a year, made from models furnished
    by the corporation and sold by it only in connection with the soda water
    apparatus made by it and as a part thereof.

The corporation also had sales agencies at other places in the city of New York,
    at which nothing was sold except soda and mineral water fountains and their
    accompanying apparatus manufactured by the corporation outside of the State
    of New York, the sales being made by sample, and no stock for sale being kept
    at either of these places, the value of the samples kept at one place being about
    $10,000, and at the other about $7,500.

When sales were made from such samples the orders were sent to Boston, where
    the goods were made, and the articles were shipped from there directly to the
    purchaser.   No bank account was kept by either of these agencies, the moneys
    received from sales being sent at once to the home office in Boston, and
    when sales were made on credit the amounts were collected by that office, all
    persons in charge of the agencies in the State of New York being paid by com-
    missions on the sales made.

Occasionally a sample was sold and delivered at a sales agency, but rarely, and
    only to meet an emergency.

*Held*, that the corporation was evidently carrying on two lines of business in the
    State of New York, *i. e.*, that of selling by sample and that of manufacturing;
    that the former line of business was protected from taxation by the Federal
    laws regulating interstate commerce, and that as the corporation had no capital
    in the State of New York, save what was employed in the business of manufac-
    turing carried on in that State and of selling the articles so manufactured, it
    was exempt from taxation under the provisions of section 3 of chapter 542 of
    the Laws of 1880, as amended by chapter 522 of the Laws of 1890.

HERRICK and MERWIN, JJ., dissented.

CERTIORARI issued out of the Supreme Court and attested on the
26th day of January, 1897, directed to James A. Roberts, as Comp-

troller of the State of New York, commanding him to certify and return to the office of the clerk of the county of Albany all and singular his proceedings in assessing a tax against the relator for the three years ending November 1, 1893, in the sum of $1,800, measured by dividends paid on $300,000 of capital stock employed in the State of New York.

*Edmund L. Cole* and *John B. Green,* for the relator.

*Theodore E. Hancock, Attorney-General,* and *G. D. B. Hasbrouck, Deputy Attorney-General,* for the respondent.

PARKER, P. J. :

The relator is a corporation organized under the laws of the State of New Jersey, with a capital stock of $3,750,000 ; and it carries on an extensive business in several States.   The principal object " for which it is formed " is the manufacture and sale of soda and mineral water apparatus, and of supplies of all kinds for dealers therein, although it is authorized by its charter to *purchase* and sell such articles.

In the city of New York it has a large manufactory, where it makes " soda water apparatus and everything relating to that business."   The articles so made are sold in this State, and that part of its business is carried on in the name of the " John Matthews Apparatus Company."   Although it purchases from the manufacturer glassware to the extent of about $6,000 worth a year, yet such glass is made from models furnished by the relator, and is sold by it only in connection with the soda water apparatus made by it, and as a part thereof.

Its sole business carried on at this place and under that name, notwithstanding the purchase of such glassware, may fairly be considered a manufacturing business.

At another place in New York city it has a sales agency conducted under the name of " James W. Tufts," and at another place in such city another sales agency conducted in the name of "A. D. Puffer & Sons."   At these places nothing is sold except soda and mineral water fountains and their accompanying apparatus manufactured by the relator without this State.   And such sales are made by sample, and no stock for sale is kept at either of these places.

PEOPLE ex rel. SODA FOUNT. CO. *v.* ROBERTS. 587

App. Div.]        Third Department, May Term, 1898.

The value of the samples kept in the Tufts' place was about $10,000, and in the A. D. Puffer & Sons' place was about $7,500. When sales were made from such samples, the orders were sent on to Boston where the goods were made, and the articles shipped from there direct to the purchaser. No bank account was kept by these agencies. Money received from sales made was sent at once to the "home office in Boston," and when sales were made on credit the accounts were collected by that office. The persons in charge of such agencies in New York were paid by commissions on the sales made. None of the products made at the manufactory conducted in this State under the name of the "John Matthews Apparatus Co." were sold at these agencies, though for a similar purpose they were markedly different in style and were sold direct from the factory where they were made, or through traveling salesmen.

Occasionally a sample was sold and delivered at a sales agency, but this was rarely done and only to meet an emergency. It seems that the stock kept at the sales agency was in good faith kept there as samples only. It also appears that some conditional sales were made in this State, where the title to the property sold and delivered was held by the relator until paid for. But in such instances, it having already been sold, the property should not be considered as kept in this State for sale, or as capital employed herein.

From the foregoing statement it appears that the capital of the relator, which is employed in this State, is employed wholly in manufacture. It has no capital in this State save what is employed in the business done under the name of the "John Matthews Apparatus Co." It evidently does other business in the State, but in conducting that it employs none of its capital here. (*People ex rel. Washington Mills Co.* v. *Roberts*, 8 App. Div. 202; affd., 151 N. Y. 619.) It is true that, under its charter, it has the right to *purchase* and sell as well as to manufacture and sell the articles above mentioned. But it has not engaged in such business, and in that respect it differs from the case of *People ex rel. Western Electric Co.* v. *Campbell* (145 N. Y. 587).

Under these circumstances I think that the relator was exempt from taxation under the provisions of section 3 of chapter 542 of the Laws of 1880, as amended by chapter 522 of the Laws of 1890.

It was evidently carrying on two lines of business in this State.

The one, that of manufacturing only, in which all the capital it had in this State was employed. The other that of selling by samples. This latter business was, however, protected from taxation by the Federal laws regulating interstate commerce. (*Brennan* v. *Titusville*, 153 U. S. 289. See, also, *People ex rel. Pennsylvania R. R. Co.* v. *Wemple*, 138 N. Y. 1.) And we are, therefore, not to suppose that the Legislature had it in mind when it provided in the section above cited that all foreign corporations "doing business" in this State should be taxed on such business. Nor, in considering the exemption granted to such foreign corporations as should "*wholly*" engage in manufacturing within this State, should we assume that it intended such a business to operate against such exemption.

The policy of the act was to compel foreign corporations who were having the benefit of our markets in the prosecution of their business to pay a just share towards the taxes of the State (*People ex rel. Badische, etc.*, v. *Roberts*, 152 N. Y. 59, 63), but when their business was that of manufacturing within our State the advantages derived therefrom by the State were supposed to equal the benefits conferred. Hence, the exemption to those corporations which employed their capital in that class of business. The relator clearly comes within the spirit of that exemption. All the capital it has within the State is employed in manufacturing. The State has the full benefit of that business. The only other business is of a kind that not only employs no capital, but that is entirely beyond the authority of the State to interfere with. In no event could the State impose a tax on it for the benefits accruing from such a business, and, therefore, it could have had no interest or purpose to suppress its prosecution. All the legislation in that section, both as to imposing the tax and the exemption from it, is made without reference to such a business. Therefore, the relator, notwithstanding its said sales by samples, is, within the meaning of the statute, wholly engaged in manufacturing in this State.

A similar conclusion was reached by this court in the case of *People ex rel. Brewing Co.* v. *Roberts* (22 App. Div. 282). It is true that in that case no sales were made by sample in this State, nor was there any salesroom here. Orders were taken in this State by traveling agents, for beer made in New Jersey, and such beer was shipped to the purchaser from the brewery. But no difference is

PEOPLE ex rel. SODA FOUNT. CO. *v.* ROBERTS.   589

App. Div.]        THIRD DEPARTMENT, MAY TERM, 1898.
perceived in principle from such a mode of business and the one followed in this case. In either case it is the right to bring its goods from another State into this State and sell them without license or other tax that is preserved to the foreign party; and so long as only samples are present here and nothing is in this State to be taxed but the sale itself, it is a business that the Federal law protects.

Neither in this case nor in the brewery case were there any goods stored for sale in this State; and in this respect each differs from the case of *People ex rel. Parke, Davis & Co.* v. *Roberts* (91 Hun, 158), and *People ex rel. The Southern Cotton Oil Co.* v. *Wemple* (131 N. Y. 64).

My conclusion is that the relator was exempt from taxation.

The determination of the Comptroller should, therefore, be reversed, with fifty dollars costs and disbursements, and the sum which the relator has paid in pursuance thereof should be credited to it, with interest thereon from the time of its payment, in its account with the Comptroller.

All concurred, except MERWIN and HERRICK, JJ., dissenting.

HERRICK, J. (dissenting):

I am unable to agree with Mr. Justice PARKER in the conclusion that he has reached that the relator is exempt from taxation.

The theory upon which he proceeds is that the relator is carrying on two kinds of business in this State, " One, that of manufacturing only, in which all the capital it had in this State was employed. The other that of selling by samples," and that this latter business was protected by the Federal laws regulating interstate commerce; and that because one kind of business carried on by the relator is protected by the laws of the United States in relation to interstate commerce, and as the balance is manufacturing, that thus the entire business and the entire capital stock of the corporation is exempt from taxation.

Laws exempting from taxation are to be strictly construed.

The statute under which the exemption is claimed in this case is section 3 of chapter 542 of the Laws of 1880, and amended by chapter 522 of the Laws of 1890, which exempts corporations " wholly engaged in carrying on manufacture, or mining ores within this State."

The relator is not " wholly engaged in carrying on manufacture ;" it is doing other business within this State besides that of manufacture.   It may be, and probably is, true that none of its capital stock is engaged in this State in any other than manufacturing business, but it has places of business, employees and samples of its wares ; and at those places of business, and by those employees and from those samples, sales are made ; it is a business that is done in connection with its manufacturing and in connection with the sales of those articles manufactured within this State, and the fact that a part of that business is exempt from taxation does not make it a corporation " wholly engaged in manufacturing."

It comes within the principle of *The People ex rel. Wiebusch Co.* v. *Roberts* (19 App. Div. 574) and of *The People ex rel. Pennsylvania R. R. Co.* v. *Wemple* (138 N. Y. 1) where it was said : " There would seem to be no question that domestic corporations engaged in both State and interstate commerce, may lawfully be subjected by the State to a franchise tax, measured by its whole capital or business, or in any other way in the discretion of the Legislature without taking notice of the part of its business arising from interstate commerce, provided no hostile discrimination is made against such part.   Nor would there seem to be any valid reason why a foreign corporation engaged both in the business of State and interstate transportation in this State, should not be subject to taxation in common with domestic corporations."   (See, also, *People ex rel. Western Electric Co.* v. *Campbell*, 145 N. Y. 587.)

Merwin, J., concurred.

Determination of Comptroller reversed, with fifty dollars costs and disbursements, and the sum which the relator has paid in pursuance thereof ordered credited to it, with interest thereon from the time of its payment, in its account with the Comptroller.