77 U.S. 410
 19 L.Ed. 972
 10 Wall. 410
 DUCAT
v.
CHICAGO.
 December Term, 1870
 
 ERROR to the Supreme Court of the State of Illinois; the case being thus:
 Statutes passed by the legislature of Illinois in 1853 and 1857, 'to regulate the agencies of insurance companies not incorporated by the State of Illinois,' required the agents of all such insurance companies, desirous to transact business in the State, to take out a license from the auditor of the State; and, before obtaining it, to furnish him with a statement, under the oath of the president or secretary of the company, showing its name and locality, the amount of its capital stock, the portion paid in, the assets of the company, and to furnish also a written instrument, under the company's seal, authorizing the agents to accept service of process, and agreeing that service on them shall be valid. Upon all this being done, and $5 paid for filing and examining the statement, and $1 for the certificate, a license authorizing the agent applying for it 'to transact the business of insurance in this State,' is then allowed to be granted from year to year.
 By another act, passed a few years later (1863), incorporating the city of Chicago, the legislature of the State enacted that all foreign insurance companies engaged in effecting insurances in that city should pay to the city treasurer the sum of $2 upon the $100, and at that rate upon the amount of all premiums which shall have been received; designating the time and mode of payment. The law, also, in case of default of payment, provided that it should be unlawful for the company to transact any business of insurance in the city until the payment was made, and that the rates might be recovered of the company, or of its agent, in the name and for the use of the city.
 With these laws in force, one Ducat, residing in the city of Chicago, and the agent there of several insurance companies chartered in the State of New York, took out licenses in 1865, authorizing him to carry on the business of insurance as agent of said companies. He paid the State for his license, but refused to pay anything to the city of Chicago, on the ground chiefly that corporations were citizens within the meaning of that clause of the Constitution which declared that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States, and the city thereupon brought this suit to recover the rates which he thus refused to pay.
 The court below decided in favor of the city, and Ducat brought the case here chiefly for the purpose of having the point above raised decided, the parties and counsel to the present case not knowing of the then pendency of the case of Paul v. Virginia,* in which it was soon afterwards decided that corporations were not 'citizens' within the above quoted clause of the Constitution, and decided also that each State may prescribe the terms on which corporations created in other States may be allowed to carry on their corporate business, especially when it is that of insurance, within that State.
 
 Mr. S. W. Fuller, for the plaintiff in error:
 
 Paul v. Virginia decides the main point which we brought this case here to raise. But the facts of our case may perhaps take it out of the scope and effect of the decision in that.
 This license here granted by the State is, in form and substance, a license to foreign insurance companies to transact their business in the State of Illinois, as domestic companies may do. The disclosures and statements made to the auditor, the stipulations as to service of process, and the fee paid that officer for each license, must be regarded as a good consideration paid by the companies for such permission. By taking out the licenses issued by the auditor the companies become, as it were, naturalized, and legally domiciled in the State. No doubt the State might, under Paul v. Virginia, have excluded them altogether; but having enacted general laws permitting, if not inviting, them to come there and to do business under them, the privilege thus granted ought not to be diminished or impaired by unequal and discriminating taxes, levied by the cities in which the agencies are established; taxes not levied on domestic companies.
 The sections of the city charter which provide for the collection of this tax are a part of the revenue system of the city, and the tax cannot be regarded as the price paid for the privilege of coming into the State and doing business, because the auditor issued the license under the general law, and, pursuant to that license, the companies commenced business in Chicago, and received the premiums, two per cent. of which are now demanded by the city of Chicago. This is a tax levied upon property; a tax, too, of a most oppressive character; for a tax on gross receipts is a tax upon that in which the company may not have any interest after paying the losses sustained upon the risks for which the premiums were paid, for there may be nothing left to it after paying those losses.
 It is true that the amount of its tax or its fairness does not affect the question of the power to levy it; but, if it is not a license fee, then it is a tax levied according to an arbitrary rule, and its unjust and unequal character is a proper subject of consideration in passing upon the validity of the law imposing it.
 Paul v. Virginia hardly concludes this case. There Paul refused to comply with all the terms required by the law of Virginia of foreign insurance companies, upon establishing agencies for the transaction of insurance business in that State, and therefore did not have a license for carrying on the business. For this violation of the law he was prosecuted by the State to recover the penalty imposed upon persons guilty of its violation; and this court decided that the law was valid, and that he was liable to the penalty; but it did not decide, that if he had obtained the license, the property of the companies represented by him could be taxed by the State of Virginia, at a greater rate than the like property of the citizens of that State, merely because it belonged to foreign insurance companies. That question was not presented by the facts of the case.
 A license to foreign companies is required on grounds of public policy, to protect the community against loss from irresponsible insurance companies, and a license has here been had. We have now a tax in addition levied upon the company's property; an unequal, and as we maintain, an invalid tax.
 
 Mr. M. F. Tuley, city counsel, contra:
 
 This court decided, in Paul v. Virginia, not only that corporations are not 'citizens' in the sense set up, but decided also that 'corporations created in one State had not even an absolute right of recognition in other States, but depend for that and for the enforcement of their contracts upon the assent of those States, which may be given accordingly on such terms as they the other States—please.' Counsel endeavor to avoid this by the proposition that 'by taking out licenses issued by the auditor, the companies become, as it were, naturalized and legally domiciled in the State.' In other words, that the company becomes a quasi citizen. But the Constitution does not recognize quasi citizens, or their rights.
 The State, through its legislature, prescribed the terms upon which the State will give recognition to foreign corporations; upon which it will permit them to do business in the State, and upon which it will recognize their special privileges, and enforce contracts made by them. These terms are that they shall file the sworn statement, and obtain the certificate (or license) from the auditor of the State, in accordance with the acts of 1855 and 1857, and that they shall also render to the city—if they transact business in it—the account required of them, and pay $2 upon the $100 of their gross receipts to the city treasurer, as provided in the act of 1863.
 If these corporations are merely creations of the local law which created them; if they are not citizens; if they have no 'privileges or immunities' which other States are bound to recognize; and if the other States may prohibit them doing business—their very existence—within the limits of such other States respectively (all of which has been decided in Paul v. Virginia), then it follows that the State of Illinois has the right to provide, as in the acts of 1855, 1857, and 1863, that any foreign corporation, as a condition to its doing business in the city of Chicago, shall not only take out a State license, but shall also pay a pro rata of their premiums received from business transacted in the city to the city treasurer.
 Counsel argue, that having received the certificate (or license) from the auditor, the foreign corporation thereby acquires the right to transact its business anywhere in the State, on an equality with local or domestic corporations. The proposition assumes, that the only terms exacted of the foreign companies are the filing of the statement with the auditor, and the obtaining the certificate or license from him. But this is a false assumption. If the acts of 1855, 1857, and the act of 1863 are not inconsistent, and can all stand together, then there is a very important limitation or condition which the counsel has omitted; which is, that if the foreign company desires to do business in the city of Chicago, it must, in addition to filing the statement with the auditor, and obtaining the license from him, pay to the city treasurer $2 on every $100 of its gross receipts, and render its account to the city controller, as required by the act of 1863. The terms which the State has pleased to prescribe are, compliance with all three of the acts of 1855, 1857, and (the city charter) 1863.
 Mr. Justice NELSON delivered the opinion of the court.
 
 
 1
 This case was pending here when that of Paul v. Virginia was argued and decided; the decision in which, as is admitted by the learned counsel for the plaintiff in error, has already disposed of all the principal questions involved.
 
 
 2
 Paul, the agent of the insurance companies in that case, refused to comply with some of the conditions annexed by the law of Virginia to the granting of the license, on the ground: 1, that the corporations he represented were entitled to all the privileges and immunities of citizens of the several States, and that the law imposing discriminating conditions against foreign corporations was void as repugnant to this clause of the Constitution; and 2, that it was void as against the commercial power. Both these grounds of defence were overruled for the reasons assigned in the opinion of the court, which need not be repeated, and the agent held liable to the penalty imposed for a violation of the act. The principle of that case must govern the one before us. The only difference between the statute of Virginia and that of Illinois is, that the latter is more onerous to the companies than the former. The difference is in degree, not in principle.
 
 
 3
 The power of the State to discriminate between her own domestic corporations and those of other States, desirous of transacting business within her jurisdiction, is clearly established in the case we have referred to, as it also had been in the previous case of Augusta v. Earle.** As to the nature or degree of discrimination, it belongs to the State to determine, subject only to such limitations on her sovereignty as may be found in the fundamental law of the Union. We find no such limitations in this case.
 
 
 4
 JUDGMENT AFFIRMED.
 
 
 
 *
 8 Wallace, 168.
 
 
 **
 13 Peters, 519.