# Southern Railway Co. *v.* Greene, Probate Judge.

## *Action to Recover Taxes.*

(Decided April 6, 1909.   49 South. 404.)

1. *Franchise; Nature of Right.*—A franchise is a special privilege conferred by the government upon an individual or corporation.

2. *Taxation; Franchise.*—A franchise is a right to carry on the business for which the corporation was chartered, and a tax on a corporation franchise is not a tax on the right to be a corporation. The right to be a corporation is a right or franchise belonging to the individuals composing the corporation, and not to the corporation itself.

[Southern Railway Co. v. Greene, Probate Judge.]

3. *Licenses; Subject; Privilege Tax.*—Section 2391, does not impose a tax on the franchise of a foreign corporation as property, but adds to the license tax already required an additional privilege tax for the continued exercise of corporate franchises in the state. (Construing together sections 2364, 2365 and 2391, Code 1907.)

4. *Corporations; Foreign Corporations; Right of State to Exclude.* —A state may exclude a foreign corporation from coming within its limits or may impose such terms as it sees fit for the privilege of allowing it to transact business within its limits.

5. *Constitutional Law; Impairment of Obligation of Contract; Foreign Corporations.*—Section 2391, Code 1907, is not violative of article 1, section 10, of the Constitution of the United States, nor of the Constitution of the state, as to foreign corporations which had complied with all previous laws before its 'enactment so as to be qualified to do business in this state, and had paid all annual licenses, and all taxes on property required of corporations including the franchise.

6. *Same; Equal Protection; Within the Jurisdiction of the State.* —A foreign corporation which has complied with all the laws of the state by paying the fees required for the privilege of doing business in the state, has established a known place of business and designated an agent and has purchased property in the state and entered upon the transaction of the business authorized may be said to be within the jurisdiction of the state as that term is used in amendment 14, to the Constitution of the United States.

7. *Same; Foreign Corporations; Franchise Tax.*—Section 2391, Code 1907, is not violative of the 14th amendment of the Constitution of the United States.

8. *Commerce; Interstate Commerce; Regulation.*—Section 2391, Code 1907, is not invalid as an unwarranted interference with interstate commerce.

9. *Statutes; Subject Title.*—Acts 1907, page 421, has a title sufficient to cover section 2 thereof so as not to be violative of section 45, Constitution 1901; the levy for county purposes being cognate to the general subject of providing revenue for the state.

(Anderson, J., dissents.)

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by the Southern Railway Company against Samuel E. Greene, as judge of probate of Jefferson county, to recover an intangible franchise tax paid said county under protest. Judgment for defendant and plaintiff appeals. Affirmed.

JAMES WEATHERLY, ALEX P. HUMPHREY, and ALFRED P. THOM, for appellants.—The act is unconstitutional as

denying to the Southern Railway the equal protection of
the law as a person within the jurisdiction of the state.
—*Pembina Mining Co. v. Pennsylvania,* 125 U. S. 181;
*Blake v. McClung,* 172 U. S. 239. It is perfectly obvious
that to tax the same kind of property in a substantially
different way simply because that property is owned by
different persons, is a denial of the equal protection of
the law.—*Paul v. Virginia,* 8 Wall. 168; *Security Mu-
tual Co. v. Spruell,* 202 U. S. 243. A foreign corporation
has a right to enter a state for the purpose of carrying
on interstate commerce.—96 U. S. 1; p. 12 U. S. 326; 127
U. S. 641; 136 U. S. 104; Ib. 114; 141 U. S. 47. The case
in hand is one in which a corporation has complied with
the laws of a state foreign to its origin, and under these
laws has purchased a particular kind of property which
is valuable only when employed in a particular way.—
64 Fed. 177. As to the rights of a foreign corporation
which has, by permission of a state, come within its
jurisdiction and there acquired property, see.—*Erie R.
R. v. Pennsylvania,* 152 U. S. 628; *Commonwealth v.
M. & O. R. R. Co.,* 64 Ala. S. W. 451; *American Smelt-
ing Co. v. Colorado,* 204 U. S. 103; *Seaboard A. L. Co.
v. R. R. Comm.,* 155 Fed. 792; *Chicago Ry. Co. v. Lud-
wig,* 156 Fed. 152. The county tax provided for in said
act is invalid because not covered by the title.—Section
45, Constitution 1901; *Waller v. The State,* 142 Ala. 7;
*State v. Southern Railway,* 115 Ala. 250; *Bell v. The
State,* 115 Ala. 87; *Brown v. The State,* 115 Ala. 174;
*Sanders v .County Comm.,* 117 Ala. 543. It is not a
general revenue bill, and hence, is not saved by section
110, Constitution 1901. Privilege or occupation taxes
must be equal and uniform upon all classes of persons
and corporations engaged in like business.—*Phoenix
Carpet Co. v. The State,* 118 Ala. 143. The usual and
most certain test as to whether a tax is a property tax

or a franchise tax is whether it is upon capital stock *eo nomine* without regard to its value or at its assessed valuation. If the former, it is a franchise tax; if the latter, it is a property tax.—*State v. Stonewall Ins. Co.,* 89 Ala. 338; *Phoenix Carpet Co. v. State,* 118 Ala. 150; *Gulf & Ship Is. R. R. Co. v. Hughes,* 183 U. S. 66. Appellant's road as operated in Alabama is composed of a number of roads, most of which were built by Alabama corporations and acquired by Appellant under sections 1169 and 1170 of the Code of 1896. Such acquisitions resulted in inviolable contracts, first, between the Appellant and the selling road, and, second, between the Appellant and the State of Alabama.—*American Smelting Co. v. Colorado,* 204 U. S. 103; *Bernheimer v. Converse,* 206 U. S., 529; *Whitman v. Bank,* 176 U. S., 559. The charter rights of the domestic corporations acquired by such purchases, can only be altered, amended or revoked when by such revocation no injustice is done to Appellant's stockholders.—*Vicksburg v. Vicksburg Water Works,* 202 U. S. 465. Under section 22 of the Constitution of Alabama, the powers conferred upon corporations by sections 1169 and 1170 can be revoked, but the contracts made under those powers while unrevoked cannot be impaired by the legislature.—*People v. Brown,* 111 N. Y. 1; *Slaughter v. Mobile County,* 73 Ala. 134; *Weller v. City of Gadsden,* 141 Ala. 659.

ALEXANDER M. GARBER, Attorney General, THOMAS W. MARTIN, Assistant Attorney, SAMUEL D. WEAKLEY, and H. C. SELHEIMER, for the State.—It is not a denial of equal protection of the law to impose on a foreign corporation an annual tax for the privilege of doing business in the taxing state when no such tax of a different amount is imposed on domestic corporations engaged in a like business.—77 U. S. 410; 171 U. S. 662; 54 Am.

Dec. 522; 31 L. R. A. 41; 92 Ill. 339; 77 St. Rep. 548; Gray on Taxing Power, sec. 1318; 19 Cyc. 1227; General Acts 1907, p. 416. The constitutional provision against state laws impairing the obligation of contract does not prevent the state from either revoking the license granted and excluding the corporation altogether, or imposing new conditions or restrictions upon its right to continue the business.—19 Cyc. 1231; 72 U. S. 602; 119 U. S. 110; 155 U. S. 648; 125 U. S. 181. The power of the state to tax the franchise of a foreign corporation doing business in the state extends to corporations engaged in interstate commerce.—142 U. S. 219; Gray on Taxing Power, 996. The mere grant by the state to a corporation of a power or franchise, although the grant amounts to a contract, and although a bonus or consideration be paid for the grant, does not deprive the state of the power to tax the corporation, for the use of the power or franchise unless it is expressly stipulated that no such tax will be imposed.—199 U. S. 1; 143 U. S. 192; 101 U. S. 528; 37 L. R. A. 446. The purchase of other lines within the state did not constitute a contract. —191 U. S. 379. Where the authority to consolidate is afforded by the statute laws of one only of the constituent companies an attempted consolidation is void, and does not create a corporation de facto.—10 Cyc. 2900; 6 A. & E. Ency. of Law, 827. A public service corporation has no power to abandon its public function or transfer or sell its franchise, or any of its property necessary to enable it to perform its public functions without the express consent of the legislature of the state of its origin.—*Am. L. Co. v. Tombigbee V .R. R. Co.*, 45 South. 911; 101 U. S. 71; 139 U. S. 24; 130 U. S. 1; 161 U S. 690 A tax which, in effect, is a restriction or burden upon transactions not within the scope of the commerce clause of the Constitution, is not open to objection mere-

ly because the amount there is determined with reference to transportation or transactions, or instrumentalities used in transportation or transactions that are within the scope of said clause.—*Cook on the Commerce Clause,* p. 149; *Maine v. Grand Trunk R. Co.,* 142 U. S. 217; 35 L. ed. 994; *Osborne v. Florida,* 164 U. S. 650; 41 L. ed. 586; *Horn Silver Min. Co. v. New York,* 143 U. S. 305; 36:164. The consolidation of two or more corporatins, under the authority of a statute like that of Alabama, even though one of the corporations be a foreign corporation, dissolves and extinguishes all the constituent corporations and creates a new one.—*Shields v. Ohio,* 95 U. S. 319; 24 L. ed. 357; *Maine Central R. v. Maine,* 96 U. S. 499; 24 L. ed. 836; *Atlantic & G. R. v. Georgia,* 98 U. S. 359; 25 L. ed. 185; *St. Louis, etc. R. v. Berry* 113 U. S. 465; 28 L. ed. 1055; *Keokuk & M. V. R. v. Missouri,* 152 U. S., 152 U. S. 301; 38 L. ed. 450; *Yazoo & M. V. R. v. Adams,* 180 U. S. 18; 45 L. ed. 395; *Rochester R. v. Rochester,* 205 U. S. 236; 51 L. ed. 784.

SIMPSON, J.—This suit was brought by the appellant against the appellee, as probate judge of Jefferson county, to recover $22,458.36, which had been paid to said probate judge under protest on account of the franchise tax required by Acts 1907, p. 418 (sections 2391-2399 of the Code of 1907). The complaint alleges that the plaintiff is a corporation organized under the laws of Virginia, specially authorized by said laws to acquire railroad properties in other states by either purchase or consolidation, and to use the same in the business of transporting passengers and freight as a common carrier; that it commenced business July 1, 1894, and has continued in business ever since, having acquired various lines of railway in Virginia, North Carolina, Tennessee, Georgia, and other states; that it is and has been

conducting both an interstate and intrastate business; that on July 16, 1894, it filed in the office of the Secretary of State of Alabama a copy of its charter, and at the same time designated its principal place of business in said state, and an agent on whom process could be served, and paid to the Treasurer of the state of Alabama $250, being a full payment of the fee required by the provisions of an act to require all corporations to pay a fee or license, for the use of the state, before commencing business in this state, approved February 18, 1893 (Acts 1893, p. 690), and at once entered upon the business in said state for which it was chartered; also that it has paid the tax on franchise, or intangible property, required of all corporations by Act March 4, 1907 (Acts 1907, p. 342; section 2365 of Code of 1907); that between the time of commencing business and the year 1899 it purchased and acquired various lines of railroad in said state, connected with and continuous of the other lines owned by it (which are described in the complaint); that it paid large sums of money for said lines, in reliance upon the then laws of Alabama, and has since continuously operated said lines, transacting a large amount of business, interstate and intrastate, and has expended large sums in maintaining the same and in improvements and betterments; that it has from year to year paid all property taxes and license taxes required by law, including the license fee of $10, by Act March 4, 1907 (Acts 1907, p. 209), required of foreign corporations only; and the tax required by Act March 7, 1907, now complained of, is exacted of foreign corporations only; that the lines operated and owned by the plaintiff in Alabama were made the basis in ascertaining the amount of said franchise tax due by plaintiff. The complaint was demurred to, the demurrers were sustained, and judgment was rendered for the defendant.

In order to determine the issues involved in this case, it is necessary, first, to ascertain the nature of the tax complained of, and, specially, whether or not it is a tax on property; counsel, in argument, placing some emphasis on this point. A franchise is a special privilege conferred by the government on individuals.—*Bank of Augusta v. Earle,* 13 Pet. 519, 10 L. Ed 274; *People's Pass. R. Co. v. Memphis City R. Co.,* 10 Wall. 38, 19 L. Ed. 844. In an early case the Supreme Court of the United States said: "A franchise is property, and nothing more. It is incorporeal property, and is so defined by Justice Blackstone. * * * It is its character of property only which imparts to it value, and alone authorizes in individuals a right of action for invasion or disturbance of its enjoyment."—*West Bridge Co. v. Dix,* 6 How. 507, 12 L. Ed. 535. In another case before the same court, in which it was held that a statute exempting all the property of a railroad corporation from taxation included the franchise, it was said: "Noting is better settled than that the franchise of a private corporation, which, in its application to a railroad, is the privilege of running it and taking fare and freight, is property, and of the most valuable kind, as it cannot be taken, for public use even, without compensation. It is true it is not the same sort of property as the rolling stock, road bed, and depot grounds; but it is, equally with them, covered by the general term 'the property of the company.' "—*Wilmington R. R. v. Reid, Sheriff,* 13 Wall, 264, 268, 20 L. Ed. 568. The case just cited is quoted and reaffirmed in *Gulf & Ship Island R. Co. v. Hewes,* 183 U. S. 67, 77, 22 Sup. Ct. 26, 46 L. Ed. 86.

The case of *State v, Stonewall Ins, Co.,* 89 Ala. 335, 338, 7 South. 753, 754, held merely that a tax on the "capital stock" of a corporation was a tax on property, and the court said: "Owing to the difficulty of distin-

guishing between the capital and the property in which it is invested, tests for determining whether a tax is on the property, or the franchises, may be regarded generally uncertain and unsatisfactory. * * * The usual and most certain test is whether the tax is upon the capital stock eo nomine, without regard to its value or at its assessed valuation, in whatever it may be invested. If the former, it is a franchise tax; if the latter, a tax upon property." In the case of *Phoenix Assurance Co. v. Fire Department of Montgomery,* 117 Ala. 631, 646, 653, 23 South. 843, 847, 850, 42 L. R. A. 468, the act in question required all insurance companies, domestic and foreign, to pay $200 before taking any premium against fire, etc., and this court considered it a "privilege or occupation tax;" the court saying: "Moreover, it is well settled that limitations have relation to the taxation of property only, property which must be assessed according to its value, and not to other subjects of taxation, such as privileges and occupations." Treating it as a privilege tax, it was upheld; the court saying: "The rule of uniformity does not require that all subjects be taxed or not taxed alike. The requirement is complied with when the tax is levied equally and uniformly on all subjects of the same class and kind." In the case of *Phoenix Carpet Co. v. State,* 118 Ala. 143, 151, 152, 22 South. 627, 628, 72 Am. St. Rep. 143, the tax complained of was distinctly a privilege tax, levied only on those corporations not otherwise specifically required to pay a license tax, whether domestic or foreign. The validity of the tax was questioned by a domestic corporation, on the ground that it violated the uniformity provisions of our Constitutions, first, because such privilege tax was not required of individuals doing a like business; and, second, because it was not required of all corporations. The tax was held to be valid; the court saying: It "has the prop-

erties and quality of a franchise tax. It is measured or graduated by the amount of the paid-up capital stock of the corporation, and this distinguishes it from a tax on property." It will be observed that these cases refer to privilege or occupation taxes, which, as stated, are "annexed to the franchise, as a royalty for the grant;" and it is stated that "the tax may be imposed on the creation of the corporation, but if the charter or grant of incorporation does not expressly exempt it from taxation, a tax on the franchise may be subsequently imposed at the will of the Legislature," provided equality and uniformity is observed, which "consists in the imposition of the like tax upon all who engage in the avocation, or who may exercise the privilege taxed, and, if it be a franchise tax, upon all corporations belonging to the class upon which it is imposed."

It was said in argument that the tax on a corporate franchise is a tax on the right to be a corporation; but that is not correct, for the right to be a corporation is a right or franchise that belongs to the individuals who compose the corporation, and not to the corporation itself. The franchises of the corporation are the rights to engage in and carry on the business for which it was chartered.—*Fietsam, Assignee v. Hay*, 122 Ill. 293, 13 N. E. 501, 502, 3 Am. St. Rep. 492; *Cedar Rapids Water Co. v. City of Cedar Rapids*, 118 Iowa, 234, 91 N. W. 1081, 1083; *Memphis & L. R. Co. v. Commissioners*, 112 U. S. 609, 619, 5 Sup. Ct. 299, 28 L. Ed. 837. There are so many conflicting authorities that it is a matter of considerable difficulty to know just where to draw the line between a franchise as an asset of the corporation and a franchise tax as synonymous with a license or privilege tax. In a case in New York, where a tax was imposed on "the corporate franchise or business" of all corporations, and it was sought to be imposed upon a

Pennsylvania corporation which had no property in New York, but had terminal facilities, such as wharves, piers, and docks, for receiving passengers and freight to be carried to its railroad in New Jersey, and an office for issuing tickets, etc., the Court of Appeals held that the law was not violative of the interstate commerce law, because the tax was not on the property, but on the "corporate franchise or business, by the express language of the enactment," and said: "The tax, when imposed on a domestic corporation, is a tax on its corporate franchise; when imposed on a foreign corporation is a tax on its business—a distinction based on the fact that corporate franchises are only taxable within the jurisdiction which creates them, and where alone they can be said to have a situs."—*People ex rel. Penna. R. Co. v. Wemple,* 138 N. Y. 1, 33 N. E. 720, 19 L. R. A. 694, 696, 697. In another case, in which it was held that a tax on the "capital stock" of a corporation did not mean the shares of stock in the hands of the shareholders, but the capital owned by the corporation, the court said: "The franchise of the company, which may be deemed its business opportunity and capacity, is the property of the corporation;" also, "that the property of every company may consist of three separate and distinct things, which are its capital stock, its surplus, its franchises."—*People ex rel. U. T. Co. v. Coleman et al.,* 126 N. Y. 433, 437, 438, 27 N. E. 818, 12 L. R. A. 762. In another case, in which the Supreme Court of the United States affirmed the New York Court of Appeals in holding that this franchise tax was not a tax on the capital stock, and not invalid, in so far as bonds of the United States constituted a part of that stock, the court holds that the term "corporate franchise or business" means "the right or privilege given by the state to two or more persons of

being a corporation—that is, of doing business in a corporate capacity—and not the privilege or franchise which, when incorporated, the company may exercise"; also "that the tax is not a tax on the capital stock or property of the company, but upon its corporate franchise."—*Home Ins. Co. v. New York,* 134 U. S. 594, 599, 606, 10 Sup. Ct. 593, 597, 33 L. Ed. 1025.

It will be observed that the question at issue in these cases was, not whether the corporate franchise is property, but whether it is identical with the tangible property which it represents. So really these decisions do not throw much light on the question as to whether the franchise of a corporation is, in and of itself, property. In a late case, in which the Supreme Court of the United States held that certain provisions of the charter of a corporation did not prevent the state from levying a franchise tax, the court says: "The tax in question is a property tax, and the effect of the decision is to uphold a valuation of the whole property as a going concern." —*Honolulu T. Co. v. Wilder,* 211 U. S. 137, 142, 29 Sup. Ct. 44, 45, 53 L. Ed. Joyce, in his recent work on Franchises, draws the distinction between a franchise to be and a franchise to do, but holds that both go with it, wherever it goes, as a corporation. He also speaks of them as "intangible properties."—Joyce on Franchises, § 39. He also speaks of the various names given in different states to charges imposed upon the franchise right of corporations to carry on their business within the state, and notes the conflicts, but states that, by whatever name called, the state has the power to impose conditions on foreign corporations, within certain limits, for doing business in the state. Joyce on Franchises, § 356. Mr. Gray, in his work on Limitations of Taxing Power, states that the franchise to be and the franchise to do may be taxed either as property, or "by way of

privilege, excise, or license taxation" (page 34, § 47a). He seems to think that the law is in such a state of chaos that, in many cases, it may be decided either way (pages 38, 39). He suggests a solution, to the effect that, when used as a noun, the word "franchise" indicates property, but when used as an adjective, in the expression, "franchise tax," it indicates a privilege tax, and he says: "Where a tax is imposed in the shape of an annual charge or excise upon the right to continued corporate existence, that also is not a property tax, but a privilege or license tax." Pages 40, 41 §§ 53, 54, 55. After citing a number of cases, his summary is: "A tax on an occupation or business act generally, which might be carried on either by a corporation or by an individual is a simple privilege tax," etc. "A special tax on a domestic corporation, or one measured by the amount of earnings or dividends, or business done, is generally a privilege tax, and the privileges or franchises thus taxed may be both a privilege of continued corporate existence and the privilege of doing the business for which the corporation is organized, or either. A specific tax on a foreign corporation, measured by the amount of business done, or by the amount of receipts or earnings or dividends, is generally a tax on the privilege of doing business in the state. A tax on a domestic or foreign corporation, which involves a valuation of property, by reference to the amount of capital stock, and an assessment upon such valuation, is generally a property tax," etc. Page 53, § 67. The conclusion is that, while a corporate franchise is property, and a valuable asset, of the corporation, yet the term "franchise tax" may be used to indicate a license or privilege tax—in other words, a tax imposed by the state for the continued privilege of exercising the franchise in the state.

In order to ascertain the meaning which the Legislature attached to the word, and the intent of the law, it becomes necessary to examine the several laws on the subject: Section 2364 of the Code of 1907 provides that "there shall be subject to taxation, in this state, the franchises, or intangible property, and assets of each and every corporation, whether organized under the laws of this state or of any other state or government," etc. Section 2365 provides for the same rate of taxation on this intangible property as on the tangible property, and the succeeding sections provide for reports and statements, upon which the value of such intangible property may be determined. Section 2391 provides that "every foreign corporation, authorized to do business in this state (with certain exceptions), shall pay annually to a judge of probate of a county in which it has a resident agent a franchise tax for the use of the state, and for the amounts specified in the next succeeding section." The succeeding section classifies them according to the amount of capital employed in the state, to wit: On a corporation having capital employed in this state of $100 or less, 25 per cent.; on those whose capital so employed exceeds $100, but does not exceed $1,000, 25 per cent on the first $100 and 5 per cent on the remainder, etc. In accordance with the principles before adverted to, we are of opinion that the intention of this act was not to levy an assessment on the franchises as property, but to add to the license tax already required an additional privilege tax for the continued exercise of the corporate franchises in the state.—*Spira et al. v. State,* 146 Ala. 177, 178, 41 South. 465.

The complaint shows that the appellant corporation paid the license fee required by law, when it complied with the other conditions necessary to do business as a corporation in this state, and also the annual license tax

required by law. The payment of these fees conferred upon the individuals the right to be a corporation in Alabama, and upon the corporation the franchise to engage in the business for which it was organized, with the rights thereto appurtenant, though it is not denied that the state may afterwards add a tax on the franchise, "as a royalty to the grant," in accordance with our decisions before cited. That royalty may be added in the shape of a tax on the franchise, as a valuable asset of the corporation, unless prohibited by some clause of the Constitution, or in the shape of a privilege tax for the continued exercise of its franchises. So the question arises: Can the state, after a foreign corporation has complied with previous laws, so as to be licensed to do business in the state as a corporation, has paid all annual licenses required, and has paid all taxes on property required of corporations, including a franchise tax, still require it to pay a large additional amount as a franchise tax, which is levied on foreign corporations alone? The statement of this proposition would furnish its own answer, if the question arose between two individuals, residents of the state.

The next inquiry, therefore, is whether there is anything in the nature, position, and standing of a foreign corporation which makes such a discrimination valid. It is familiar law that a state may allow a foreign corporation to transact business within its limits on such terms as it may please, or may exclude it entirely. The license, in the absence of special terms, is a mere revocable one, which may be recalled or burdened with additional restrictions, provided the Constitution of the United States is not violated.—*Doyle v. Continental Ins. Co.*, 94 U. S. 535, 541, 24 L. Ed. 148, and cases cited; *Mutual Life Ins. Co. v. Spratley*, 172 U. S. 602, 620, 19 Sup. Ct. 308, 43 L. Ed. 569; *Security Mutual Life Ins.*

*Co. v. Prewitt,* 202 U. S. 246, 249, 26 Sup. Ct. 619, 50 L. Ed. 1013. Under the foregoing, and other authorities, the law in question is not violative of the clause in our Constitution, nor of that in the United States Constitution, in regard to the impairing of the obligations of a contract, unless there are some special features connected with the granting of license to this corporation which differentiate it from the ordinary case of a license granted to a corporation. Section 1169 of the Code of 1896, under which the purchases in this case were made, provides that "such railroad so purchased shall be, in all respects, subject to the laws of this state, as if owned by a domestic corporation, and all liens and rights of creditors shall be preserved."

A statute of Colorado (section 499, Mills' Ann. St.) prescribing certain conditions necessary for a foreign corporation to enter the state, concluded with these words: "And such corporations shall be subjected to all the liabilities, restrictions and duties which are, or may be, imposed upon corporations of like character, organized under the general laws of this state, and shall have no other or greater powers." After the corporation in question had complied with the provisions of the then law, and had invested a considerable amount in its business in said state, the Legislature passed an act placing upon domestic corporations a tax of 2 cents upon each $1,000 of capital stock and upon foreign corporations a tax of 4 cents on each $1,000 of capital stock. The Supreme Court of the United States held this act to be violative of the constitutional clause prohibiting any law impairing the obligation of a contract; the court saying: "These provisions of law, existing when the corporation applied for leave to enter the state, made the payment required, and received its permit, amounting to a contract that the foreign corporation so permitted to come

in the state, and do business therein, while subjected to all, should not be subjected to any greater liabilities, restrictions, or duties than then were, or thereafter might be, imposed upon domestic corporations of like character." The court also says: "Nor is this a case where the power given by the state Constitution to the General Assembly to alter, amend, or annul a charter is applicable. The act does not alter the charter, or annul or amend it. It simply increases the taxation, which, up to the time of its enactment, had been imposed on all foreign corporations doing business in the state."—*American Smelting Co. v. Colorado,* 204 U. S. 103, 112-115, 27 Sup. Ct. 198, 200, 201, 51 L. Ed. 393. In a previous decision of that high court, written by the same justice, it was held that a provision in the California water act of 1862 (St. 1862, p. 540, c. 417), prohibiting county boards from reducing water rates below a certain point, did not create, with corporations thereafter incorporated, a contract which the state was bound by in subsequent legislation, and that the state could reduce the rates below that point without violating the contract clause of the Constitution. A number of cases are reviewed and analyzed in the opinion, and while the court holds that this power to amend is not without limit, even when reserved in the Constitution of the state, and that sheer oppression and wrong could not be inflicted under the guise of amendment or alteration, yet "a mere reduction of rates, while still leaving reasonable and fair compensation for the use of the property, is not prohibited."— *Stanislaus Co. v. San Joaquin C. & I. Co.,* 192 U. S. 201, 213, 24 Sup. Ct. 241, 246, 48 L. Ed. 406. See, also, *Wisconsin, etc., R. Co. v. Powers,* 191 U. S. 379, 383, 386, 387, 24 Sup. Ct. 107, 48 L. Ed. 229.

It will be noticed that in the Smelting Company Case the provision defining the status of the corporation was

in the act providing for the entry of the corporation into the state, so that, when the corporation complied with the terms, paid the entrance fee, and received its certificate, the contract was formed, while in the case now under consideration there were no such provisions in the statute under which the corporation entered the state, but only in the statute which authorized it to purchase the property of domestic corporations; and the claim of the appellant is that the general law of the state is incorporated into the contract between it and the selling corporation. It will be noticed, also, that section 1169 of the Code of 1896 does not say anything about what shall be the status or rights of the purchasing corporation, but only that "such railroad so purchased shall be in all respects subject to the laws of the state," etc. Section 23 of article 1 of the Constitution of 1875 prohibited the state from making any "irrevocable grants of special privileges or immunities," and this was as much a part of the contract of purchase of the railroad prop erty as was section 1169 of the Code of 1896. We hold, then, that the act complained of is not violative of said section of the Constitution of 1875, nor of section 10 of article 1 of the Constitution of the United States.

The only effect of the act complained of is to recall or revoke so much of the privilege granted as authorized the foreign corporation to do an intrastate business. The corporation remains the same, and the railroad the same, and the pleadings in this case do not raise any issue as to the result of the tax working "oppression and wrong." The fact that section 242 of the Constitution of 1901 places certain duties on railroad companies has no bearing on this question; for, if the state itself prohibits the corporation from doing intrastate business, it could not be subjected to liability for not doing it. The act does not interfere with the interstate business of the

railroad company, and there is nothing in the pleading to raise the question that the enforcement of the statute would interfere with the interstate business. Therefore the act is not invalid on that account.—*Osborne v. Florida,* 164 U. S. 650, 17 Sup. Ct. 214, 41 L. Ed. 586.

The next insistence of the appellant is that the act complained of is violative of that provision of the fourteenth amendment to the Constitution of the United States which provides that "no state shall * * * deny to any person, within its jurisdiction, the equal protection of the laws." It is settled by the decisions of the Supreme Court of the United States that, while a corporation is not a "citizen" within the meaning of that instrument, yet it is a "person" within its terms. There cannot be any controversy as to the point that a corporation of another state, which has complied with the laws of this state, so that process can be served upon it, and paid the fees required for the privilege of doing business in this state, and also purchased property in the state and entered upon the transaction of the business authorized, is "within" the "jurisdiction" of the state.—*Blake v. McClung,* 172 U. S. 239, 19 Sup. Ct. 165, 43 L. Ed. 432. In fact, the claim of the state to impose a tax on the corporation carries with it an admission that it is within the jurisdiction of the state.

In a case where a state board of equalization assessed the franchises and other property of a corporation at a different rate and by different methods, so as to result in "an enormous disparity and discrimination between the various assessments on corporations," it was held to be a violation of the fourteenth amendment.—*Raymond v. Chicago Traction Co.,* 207 U. S. 20, 37-38, 28 Sup. Ct. 7, 13, 52 L. Ed. 78. An act regulating the charges in stockyards of certain size was held to be violative of the fourteenth amendment, because there was only one stock-

[Southern Railway Co. v. Greene, Probate Judge.]

yard of that size in the state; the court saying: "While recognizing to the full extent the impossibility of an imposition of duties and obligations mathematically equal upon all, and also recognizing the right of classification of industries and occupations, we must nevertheless always remember that the equal protection of the laws is guaranteed, and that such equal protection is denied when upon one of two parties engaged in the same kind of business and under the same conditions burdens are cast which are not cast on the other.—*Cotting v. Kansas City, etc., Co. et al.,* 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92. In another case deciding that the state has a right to fix conditions upon which a corporation may do business in the state, and holding that a corporation is not a citizen, the court says that the object of the fourteenth amendment is "to prevent any person or class of persons from being singled out as a special subject of discriminating and hostile legislation. Under the designation of 'person' there is no doubt that a private corporation is included.   *   *   *   The equal protection of the laws which these bodies may claim is only such as is accorded to similar associations within the jurisdiction of the state."—*Pembina M. Co. v. Pennsylvania,* 125 U. S. 181, 188, 189, 8 Sup. Ct. 737, 740, 741, 31 L. Ed. 650. In another case, while sustaining the right of the state, as a purely police regulation, to prohibit laundry work in certain localities, the court, commenting on the fourteenth amendment, said, among other things, that it requires "that no impediment should be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition."—*Barbier v. Connolly,* 113 U. S. 27, 31, 5 Sup. Ct. 357, 359, 28 L. Ed. 923; *Bell's Gap R. Co. v. Pennsylvania,* 134 U. S. 238,

10 Sup. Ct. 533, 33 L. Ed. 892; Gray's Limitations of Taxing Powers, §§ 1114, 1115.

The Supreme Court of Kentucky, while holding that a corporation is not a "citizen," and may have imposed upon it such conditions as the state may choose to require, yet said: "If any state * * * should allow a corporation of another state to transact business as a corporation within its limits and to acquire property there, the rights and property thus legally acquired, being held by the corporators, may be entitled to the same protection, under this clause of the Constitution, as if held by the corporators themselves."—*Commonwealth v. Milton*, 12 B. Mon. 212, 54 Am. Dec. 522, 529, 530. On the other hand, the Supreme Court of Iowa sustains the right of a state to impose a higher tax on foreign corporations than is imposed on domestic corporations, basing its conclusions partly on the general principle that the state has absolute power over foreign corporations, and partly on a misunderstanding to the effect that in the *Pembina Case,* 125 U. S. 181, 189, 8 Sup. Ct. 737, 741, 31 L. Ed. 650, the Supreme Court of the United States had held that a corporation is not a "person," when in fact the decision in that case is that, although a corporation is not a "citizen," it is a "person."—*Scottish, etc., Ins. Co. v. Herriott,* 109 Iowa, 606, 80 N. W. 665, 77 Am. St. Rep. 548, 555.

The case of *Paul v. Virginia,* 8 Wall. 168, 19 L. Ed. 357, which is frequently referred to in the decisions, came up on an application for a license, and was based on the principle that a corporation is not a citizen. The Supreme Court of Illinois held that the state may rightfully discriminate against a foreign insurance company in levying taxes (*Ducat v. City of Chicago,* 48 Ill. 172, 95 Am. Dec. 529), and that decision was affirmed by the Supreme Court of the United States.—*Ducat v. Chicago,*

10 Wall. 410, 19 L. Ed. 972. It is true that this decision rests upon other provisions of the United States Constitution relating to "citizens," and no mention is made of the fourteenth amendment, yet said fourteenth amendment was then in force. The Supreme Court of California held that, after a foreign corporation was permitted to do business in that state, the state could not impose upon it conditions not imposed upon citizens, under the uniformity clause of the California statute.—*San Francisco v. Liverpool, etc., Ins. Co.,* 74 Cal. 113, 15 Pac. 380, 5 Am. St. Rep. 425. The anontator in Cyc., referring to this case, says: "However this may be, it is clear that it violates no principle of the federal Constitution, as the Supreme Court of California seems to suppose."—19 Cyc. 1228. Upon the whole, while we are free to confess that this point makes a deep impression on our minds, yet this is a matter which should be passed upon by the Supreme Court of the United States, and we hold that the decisions are not so clear as to authorize this court to declare the act in question violative of the fourteenth amendment to the Constitution of the United States.

The second section of the act (Acts 1907, p. 421) is not violative of section 45 of the Constitution of 1901. The title of the act is sufficient to cover the levy for county purposes; the same being referable and cognate to the general subject of providing revenue for the state. If there were no mention of the counties, the commissioners' court of each county could levy a tax for such county.—Code 1907, § 2155.

The judgment of the court is affirmed.

DOWDELL, C. J., and DENSON, McCLELLAN, and MAYFIELD, JJ., concur.

27—160

[Southern Railway Co. v. Greene, Probate Judge.]

ANDERSON, J. (dissenting.)—I agree with my brethren upon the proposition that all doubts should be resolved in favor of the validity of the act assailed, when the assailant has the right of appeal to the Supreme Court of the United States, and that the state's right to do so is questionable. I do not think, however, that the infirmity of the act in question is open to serious doubt; and, notwithstanding the high regard I have for the opinion of my Associates, the infirmity of the act is to me so glaring that I deem it my imperative duty to construe the law as I understand it, regardless of consequences, or whether the state has, or has not, the right of appeal.

Pretermitting the other questions insisted upon by appellants against the validity of the act in question, I am of the opinion that it is violative of the fourteenth amendment of the federal Constitution, in that the classification attempted is so unreasonable and unjust as to amount to a discrimination against one and in favor of other members of the same class. The classification has no reference to the subject or business, but is based solely on the residence of the corporation. There can be no doubt that the states have the right to require certain things of foreign corporations as a condition precedent to doing business therein; but when they enter the state upon its invitation, and after complying with its requirements, they are entitled to the equal protection of the law, which includes a guaranteed uniformity in taxation. To my mind equal protection is not accorded when one railroad is taxed thousands of dollars more than others of equal value and similarly situated, the only distinction being that one is a foreign and the other a domestic corporation, notwithstanding the tax may be designated as a franchise tax in order to avoid the influence of the state Constitution against unequal taxa-

tion on property. That the state may levy a reasonable franchise tax on corporations there can be no doubt; but it has no right to levy such a tax on one and relieve another engaged in the same identical business, simply because one is foreign and the other is domestic. The right of the state to prescribe conditions upon which a foreign corporation should enter refers to the tax imposed for the privilege of acting in a corporate capacity in the state. "It does not mean that, after the corporation has been admitted into the state and paid the charge exacted for admission, it is not entitled to due process of law or the equal benefit of the laws, under the federal Constitution, or equality and uniformity under the state government. The situation is therefore analogous to that of a domestic corporation. The state may impose such exaction as it pleases as a condition for granting the corporate franchise; but, when the corporation is organized, its property is to be taxed as other property, subject to such classification and qualification as may lawfully be made."—Judson on Taxation, § 168. It may be that the state has the right to prevent the doing of intrastate business by a nonsubmitting corporation, and which is the penalty prescribed by the statute; but it must be borne in mind that we are dealing with the state's right to collect and retain this illegal tax, and not with its right or recourse against plaintiff for resisting the right to collect and retain said tax.

The question before us is: Was the tax lawfully levied? If it was, the plaintiff cannot recover; if not legal, it can recover it back. What the state can and will do for a refusal to submit we are not called upon to decide. "Sufficient unto the day is the evil thereof," as we are dealing with the right to levy and collect, and not the penalty for a refusal to submit. Should the state attempt to deprive many of her citizens dependent solely

upon foreign corporations for a means of travel and transportation, because said corporations do not submit to an unjust discrimination, will, of course, work a hardship upon many of her inhabitants and deprive them of the advantages and conveniences of the present age of progress and enterprise, and which cannot be taken from their more fortunate neighbors situated on domestic lines, and would create a condition to be deplored. But this threatened and impracticable disaster should not deter courts from condemning all laws of an unjust and discriminatory character, such as the one in question.

I regret my inability to concur in the conclusion of my Brothers, and am constrained to voice my protest against this statute, as it involves not only a year's taxation, but a principle so far-reaching and important as to not only affect the integrity of the state, but threatens the sacred rights secured by our federal Constitution. Citation of authority is not required to demonstrate the inequality of this law and that the classification therein attempted is unreasonable and unjust. Nor do I feel it necessary to comment on many of those mentioned in the opinion, but will content myself with a short discussion of what seems to be the three leading cases relied upon as supporting the conclusion of the majority.

The case of *Ducat v. Chicago*, 10 Wall. 410, 19 L. Ed. 972, does not apply to the present question. There the fourteenth amendment was not considered, and, while the case may have been decided subsequent to the adoption of same, the statute considered was enacted prior to the amendment, and the alleged violation of same was anterior to said amendment.

The case of *New York v. Roberts*, 171 U. S. 658, 19 Sup. Ct. 58, 43 L. Ed, 323, and *Horn Silver Mining Co. v. New York*, 143 U. S. 305, 12 Sup. Ct. 403, 36 L. Ed.

[Southern Railway Co. v. Greene, Probate Judge.]

164, do not support the law in question. The statutes
there considered dealt with foreign and domestic corpo-
rations in the same manner. Indeed, the opinion in each
case is guarded on this point, and stresses the fact that
there was no discrimination against foreign corpora-
tions, simply because they were foreign, instead of do-
mestic. In the *Horn Silver Mining Co. Case, supra* the
court, speaking through Justice Field, says, "It does
not lie in any foreign corporation to complain that it
is subjected to the same law with the domestic corpora-
tion." And in the *Roberts Case, supra,* we find the fol-
lowing guarded expression: "It will be perceived that
the tax is prescribed as well for New York corporations
as for those of other states. It is true that manufactur-
ing corporations wholly engaged in carrying on manu-
facturing or mining ores within the state of New York
are exempted from the tax; but such exemption is not
restricted to New York corporations, but includes corpo-
rations of other states as well, when wholly engaged in
manufacturing within the state." It is therefore infer-
able that the statute would have been condemned, had
it discriminated against foreign corporations of the
same class as the domestic ones, and which is done by
the law in question.

I dissent from the conclusion of the majority, and
think this tax was illegal, and the plaintiff should re-
cover it back.

(Since this case was reported the Supreme Court of
the United States has reversed it, holding the act viola-
tive of the 14th Amendment of the Federal Constitu-
tion.—Reporter.)