# Kansas City M. & B. R. R. Co. *v.* Stiles, Judge.

## *Assumpsit.*

(Decided June 19, 1913. 62 South. 734.)

1. *Taxation; Franchise; Corporations Liable.*—Where a corporation is chartered under the laws of two other states as well as under the laws of this state, it is subject to the provisions of section 12, Acts 1911, p. 107.

2. *Same.*—The tax imposed by section 12, Acts 1911, p. 170, is constitutional as being primarily a license tax for the continued exercise of the corporate franchise.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by the Kansas City, Memphis & Birmingham Railroad Company against James P. Stiles to recover franchise tax. From a judgment for defendant, plaintiff appeals. Affirmed.

The complaint shows that plaintiff is a consolidated corporation organized under the laws of Alabama, and also under the laws of Mississippi and Tennessee; its original constituents being separate corporations own-

ing and operating railroad lines in each of the three above-named states, respectively. The total paid-up stock of the Alabama corporation is $5,976,000, but less than one-half of its total mileage is located in Alabama, and less than one-half of its capital and assets is employed in its business in Alabama, the greater part being employed in its business in other states. Under section 12, Acts 1911, p. 170, the defendant, who is judge of probate of Jefferson county, demanded of plaintiff a franchise tax of $2,368.25 for the year 1912, which tax was paid by plaintiff under protest properly framed, and plaintiff brings this action for its recovery as an illegal exaction paid under compulsion. The tax was computed as for a corporation organized under the laws of this state and upon the basis of its entire capital stock, instead of upon its capital actually employed in this state as provided for corporations organized under the laws of other states.

FORNEY JOHNSTON, W. F. EVANS, and E. T. MILLER, for appellant. The corporation was organized under two other states as well as under the laws of the state of Alabama, and hence, does not come within the terms of section 12, Acts 1911, p. 170.—*So. Ry. v. Green,* 216 U. S. 412. The liability of the judge of probate for the amount unlawfully exacted is established by the following cases.—223 U. S. 280; 23 U. S. 468. To give it the construction intended, would be to render the act unconstitutional and violative of the Federal Constitution as well as that of the state.—*So. Ry. v. Green, supra; Galveston R. R. Co. v. Texas,* 210 U. S. 217; *Wes. Union v. Kansas,* 216 U. S. 21; *P. & S. Mail Co. v. Pennsylvania,* 122 U. S. 326; *W. U. T. Co. v. Attorney General,* 125 U. S. 549; 15 Wall. 232; 114 U. S. 196; 121 U. S. 243; 136 U. S. 114; 199 U. S. 194.

R. C. BRICKELL, Attorney General, W. L. MARTIN, Assistant Attorney General, and DANIEL W. TROY, for the State. The first inquiry is whether the corporation was organized under the laws of this state. There is no doubt on this score.—Sec. 1583, Code 1886; *Stone v. Farmrs' L. & T. Co.,* 116 U. S. 307; *M. & C. R. R. Co. v. Alabama,* 107 U. S. 581; *Ga. & Ala. Ry. Co. v. Stollenwerck,* 122 U. S. 539, and authorities collected in 10 Cyc. 177. Conditions as well as charter powers can be modified at the will of the state, and exemptions from future legislation did not exist.—13 Wall. 190; 146 U. S. 258; 96 U. S. 499; 151 U. S. 566; 148 U. S. 397; 199 U. S. 1; 134 U. S. 418; 128 U. S. 174; 132 U. S. 75; 110 U. S. 346; 108 U. S. 526; 108 U. S. 541; 153 U. S. 436. The pleadings deny the contention asserted that the statute seeks to tax extra territorial assets.—6 Wall. 611; 134 U. S. 594. This court has sufficiently defined a franchise tax. —*Phoenix C. Co. v. State,* 118 Ala. 143; *Stonewall I. Co. v. State,* 89 Ala. 335. There is no denial of equal protection and due process of law.— Cyc. 444; 37 Cyc. 741; Secs. 239, 232, Constitution 1901; 10 Wall. 410; 13 Pet. 519; 18 Wall. 206; 121 U. S. 165; 145 U. S. 1; 155 U. S. 688, and authorities supra.

SOMERVILLE, J.—The complaint shows that the plaintiff corporation is one organized under the laws of Alabama, and doing business herein. By the specific language of section 12 of the Revenue Act, an annual franchise tax based upon the amount of paid-up capital stock is exacted of "all corporations organized under the laws of this state." On the other hand, the franchise tax exacted of "all corporations organized under the laws of any other state, nation or territory, and doing business in this state," is based upon the "actual amount of capital employed in this state."

Plaintiff's contentions are (1) that being a consolidated corporation with constituent parts organized also under the laws of Mississippi and Tennessee, and employing the greater part of its capital in those states, it does not fairly fall within the classification of "corporations organized under the laws of this state," but more properly under that of corporations organized under the laws of another state; and (2) that, if it be classified as a domestic corporation, then the operation of the act is in contravention of the federal Constitution, in that it denies to plaintiff the equal protection of the law, and in effect lays a tax on the interstate commerce in which plaintiff is engaged.

1. It is clear that plaintiff's first contention is untenable. The act embraces "all corporations organized under the laws of this state." Plaintiff is such a corporation—none the less so because organized also under the laws of two other states. "A company chartered by and carrying on its business in two or more states is, for all purposes of local government, a domestic corporation in such state, and, within each state, subject to its laws as to all matters not within the exclusive control of Congress."—*Stone v. Farmers' Loan & Trust Co.,* 116 U. S. 307, 6 Sup. Ct. 34, 388, 1191, 29 L. Ed. 636. In an earlier case it was said that, where domestic and foreign railroads consolidate on terms which in effect require the consolidated company when operating in the state to be subject to its laws, the state may "legislate for the company in that state precisely as it could have legislated for its own original company if no consolidation had taken place."—*Peik v. Chicago, etc., R. R. Co.,* 94 U. S. 164, 24 L. Ed. 97. See, also, the text and authorities cited in 10 Cyc. 170-172.

2. Section 229 of the Constitution of 1901 requires that "the Legislature shall, by general law, provide for the

payment to the state of Alabama of a franchise tax by corporations organized under the laws of this state, which shall be in proportion to the amount of capital stock." The Revenue Act undertakes the execution of this mandate.

The tax thus exacted of domestic corporations is primarily a license tax for the continued exercise of their corporate franchises.—*Southern Ry. Co. v. Greene*, 160 Ala. 396, 49 South. 404. The payment of such a tax is one of the conditions imposed by the sovereign power upon its own creatures in consideration of the boon of corporate life and the enjoyment of corporate functions and powers. The case of *Ashley v. Ryan*, 153 U. S. 436, 14 Sup. Ct. 865, 38 L. Ed. 773, cannot be distinguished in principle from the case at bar. Five distinct railroad corporations, organized and operating, respectively, in Ohio, Michigan, Indiana, Illinois, and Missouri, were consolidated into one corporation under the laws of Ohio, which required, among other things, the payment of a tax or fee of one-tenth of 1 per cent. upon the authorized capital stock of corporations for filing the articles of incorporation, and a like amount upon the increased capital stock of existing corporations for filing the certificate of increase. The consolidated corporation denied the right of the state of Ohio to collect such fees as in violation of the federal Constitution and laws, but the court, by Mr. Justice White (now Chief Justice), said: "The question here is not the power of the state of Ohio to lay a charge on interstate commerce, or to prevent a foreign corporation from engaging in interstate commerce within its confines, but simply the right of a state to determine upon what conditions its laws as to the consolidation of corporations may be availed of. Considering, as we do, that the payment of the charge was a condition imposed by the state of Ohio upon the

taking of corporate being or the exercise of corporate franchises, the right to which depended solely on the will of that state, and hence that liability for the charge was entirely optional, we conclude that the exaction constituted no tax upon interstate commerce, or the right to carry on the same, or the instruments thereof, and that its enforcement involved no attempt on the part of the state to extend its taxing power beyond its territorial limits."

In *Delaware Railroad Tax,* 18 Wall. 206, 231 (21 L. Ed. 888), it was said that "the state may impose taxes upon the corporation as an entity existing under its laws, as well as upon the capital stock of the corporation or its separate corporate property. And the manner in which its value shall be assessed and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion."

In the much cited case of *Horn Silver Mining Co. v. New York,* 143 U. S. 303, 313, 12 Sup. Ct. 403, 404 (36 L. Ed. 164), the court, by Mr. Justice Field, said: "The granting of the rights and privileges which constitute the franchises of a corporation being a matter resting entirely within the control of the Legislature, to be exercised in its good pleasure, it may be accompanied with any such conditions as the Legislature may deem most suitable to the public interests and policy. It may impose as a condition of the grant, as well as, also, of its continued exercise, the payment of a specific sum each year, or a portion of the profits or gross receipts of the corporation, and may prescribe such mode in which the sum shall be ascertained as may be deemed convenient and just. There is no constitutional inhibition against the Legislature adopting any mode to arrive at the sum which it will exact as a condition of the creation of the

coporation or of its continued existence. There can be, therefore, no possible objection to the validity of the tax prescribed by the statute of New York, so far as it relates to its own corporations." The statute referred to laid a tax upon the corporate franchise or business computed at a certain percentage on its whole capital stock. Continuing, the court concluded: "The extent of the tax is a matter purely of state regulation, and any interference with it is beyond the jurisdiction of this court. The objection that it operates as a direct interference with interstate commerce we do not think tenable;   *   *   * the tax is levied only upon the franchise or business of the company."

These authorities are, as we are constrained to think, conclusive of the federal questions presented by this appeal, and support the validity of the tax here complained of. Plantiff, however, relies for support upon the cases of *Southern Ry. Co. v. Greene,* 216 U. S. 412, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247, reversing s. c. 160 Ala. 396, 9 South. 404; *W. U. Telegraph Co. v. Kansas,* 216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355; *Galveston, etc., R. R. Co. v. Texas,* 210 U. S. 217, 28 Sup. Ct. 638, 52 L. Ed. 1031. In *Southern Ry. Co. v. Greene* it was held that an additional franchise tax imposed upon foreign corporations, and not upon domestic ones engaged in the same business, was a denial of the equal protection of the laws, and therefore offensive to the fourteenth amendment to the federal Constitution. Said the court by Mr. Justice Day: "We have here a foreign corporation within a state, in compliance with the laws of the state, which has lawfully acquired a large amount of permanent and valuable property therein, and which is taxed by a discriminating method not employed as to domestic corporations of the same kind, carrying on a

precisely similar business." From the conclusion stated the Chief Justice and Justices McKenna and Holmes dissented.

In *W. U. Telegraph Co. v. Kansas,* it was held that a state tax of one-tenth of 1 per cent. on the foreign telegraph company's total capital stock of $100,000,000, nearly all of which was invested in other states, and devoted in large part to interstate commerce, though called a license fee for doing intrastate business, was in fact a tax on property beyond the state, and was an unlawful burden on interstate commerce, and hence violated the federal Constitution in both particulars. From the conclusion stated in this case, also, the Chief Justice and Justices McKenna and Holmes dissented, with whom was in agreement Justice Peckham, who however died prior to the decision. Whatever may be the scope of these decisions with respect to the right of foreign corporations, they do not, we think, involve the principles determinative of the present case.

The case of *Galveston, etc., R. R. Co. v. Texas* is clearly not conclusive, for there it was held merely that a state tax upon railroad companies "equal to 1 per cent of their gross receipts" is, as to companies doing an interstate business, a burden on interstate commerce, and hence unconstitutional. In this case, again, there was weighty dissent by the Chief Justice and Justices Harlan, White, and McKenna; the dissenting theory being that the tax, though measured by gross receipts, was in fact an occupation tax, and only incidentally affected interstate commerce. On the whole, our survey of the decisions of the Supreme Court of the United States expository of the principles that restrict state taxation of corporate franchises leads to the conclusion that the Alabama Revenue Act is free from constitutional ob-

jection in the particulars complained of.   The judgment
of the trial court will therefore be affirmed.
     Affirmed.

     DOWDELL, C. J., and McCLELLAN and SAYRE, JJ., con-
cur.